United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEB 04 2010

Clerk of Court

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA; ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD.; ALLIANZ GLOBAL RISKS US INSURANCE CO.; COMMONWEALTH INSURANCE CO.; NAVIGATORS MANAGEMENT COMPANY, INC.; and ARCH SPECIALTY INSURANCE CO. | PLAINTIFFS |
| V. | CIVIL ACTION NO. H-10-0342 |
| AKER KVAERNER\|IHI, a General Partnership | DEFENDANT |

## COMPLAINT TO COMPEL ARBITRATION, ALTERNATIVELY FOR DECLARATORY JUDGMENT

Plaintiffs National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), Associated Electric & Gas Insurance Services Ltd. ("AEGIS"), Allianz Global Risks US Insurance Company ("Allianz"), Commonwealth Insurance Company ("Commonwealth"), Navigators Management Company, Inc., f/k/a Navigators Special Risk, Inc. ("Navigators"), and Arch Specialty Insurance Company ("Arch") (collectively "Insurers") file this Complaint to Compel Arbitration, Alternatively for Declaratory Judgment, and would show unto the Court as follows:

### I. NATURE OF ACTION

1. This is a civil action by Insurers against Aker Kvaerner\|IHI ("AK\|IHI") for an order compelling arbitration of certain disputes between Insurers and AK\|IHI arising from the Construction All Risk policies of insurance to which each of the Insurers subscribed according to its quota share percentage and each issued its separate policy (collectively "Policy") pursuant to

600088

9 U.S.C. § 201 et seq., the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), and 9 U.S.C. § 4 of the Federal Arbitration Act.

2. Alternatively, should the Court decline to order all or a portion of this matter to arbitration, Insurers seek a declaration of the rights, duties, and liabilities of the parties arising from the Policy. Insurers are entitled to declaratory relief in accordance with 28 U.S.C. §2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

## II. THE PARTIES

3. National Union is a domestic business corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in New York, New York. As part of a subscribing market, National Union issued policy number ST-260-9712 to AK|IHI and others.

4. AEGIS is a foreign business corporation organized and existing under the laws of Bermuda, with its principal place of business in Hamilton, Bermuda. As part of a subscribing market, AEGIS issued policy number L0022B1A05 to AK|IHI and others.

5. Allianz is a domestic business corporation organized and existing under the laws of the State of California with its principal place of business in Chicago, Illinois. As part of a subscribing market, Allianz issued policy number ATO 3006580 to AK|IHI and others.

6. Commonwealth is a foreign business corporation organized and existing under the laws of Canada with its principal place of business in Vancouver, British Columbia. As part of a subscribing market, Commonwealth issued policy number NME 1128 to AK|IHI and others.

7. Navigators is a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York. As part of a subscribing market, Navigators, as the managing general agent for and on behalf of

600088

Lloyd's Syndicates 1221 and 4472, issued policy number 05-NSRO-1045-01 to AK|IHI and others.

8. Arch is a domestic business corporation organized and existing under the laws of the State of Nebraska with its principal place of business in New York, New York. As part of a subscribing market, Arch issued policy number CAR0009987-00 to AK|IHI and others.

9. AK|IHI is a Texas General Partnership with administrative offices located at 3600 Briarpark Drive, Houston, Texas 77042. AK|IHI is comprised of Aker Kvaerner, Inc. n/k/a Aker Solutions US Inc. ("Aker") and IHI, Inc. ("IHI"). Aker is a domestic business corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas. IHI is a domestic business corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas. Both Aker and IHI are registered with the Texas Secretary of State to do business in Texas and have a registered agent for service in Texas. Accordingly, pursuant to the TEX. CIV. PRAC. & REM. CODE ANN. §17.022, AK|IHI may be effectively served with process by serving Aker and/or IHI through the registered agent for service for each: CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

### III. JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 201 et seq., the New York Convention, because the Policy contains an arbitration provision involving citizens of nations other than the United States.

11. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as amended, because the controversy involves citizens of different States and foreign states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

600088

3

12. This Court has personal jurisdiction over the parties. AK|IHI's administrative offices are located in Texas and, specifically, in this judicial district, and AK|IHI has by its actions submitted itself to the jurisdiction of a Texas court.

13. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b), as amended, as AK|IHI resides in this district.

## IV. FACTUAL BACKGROUND

### A. The Policy

14. Insurers, as a subscribing market, issued six separate policies of builder's risk insurance to Sempra Energy, its subsidiary Cameron LNG, AK|IHI and others providing insurance for the design and construction of the Cameron LNG Receiving Terminal Project, located in Cameron Parish, Louisiana, for the period of September 15, 2005 through December 16, 2008, thereafter extended to August 4, 2009.

15. The Policy was initially drafted and circulated by Willis of Texas, the insurance broker representing Sempra and AK|IHI. A representative copy of the Policy, issued by AEGIS, is attached as Exhibit A.

16. The Policy[1] provides coverage for all risk of direct physical Damage to the Insured Property. The Policy also contains fourteen (14) enumerated extensions of coverage. The Policy does not provide coverage for any other Damage, including business interruption, contingent business interruption, extra expense, soft costs, delay in completion, or delay in startup.

17. The insuring clause of the Policy provides: "This insurance will pay the cost of replacing or repairing or making good the Insured Property or any part thereof while at the

---

[1] Unless otherwise defined in this Complaint, capitalized terms used in this Complaint are intended to have the same meaning and/or definition ascribed to those terms in the Policy.

600088

4

Project Site physically lost, physically destroyed or physically Damaged in any direct manner and by any cause whatsoever not hereinafter excluded."

18. The Policy defines Damage as: "Damage shall mean physical damage, physical loss or physical destruction."

19. The Policy also contains numerous exclusions. Exclusion No. 4 provides: "This Policy does NOT insure … [a]ny loss of use or any other consequential loss."

**B.     The Claim**

20. The Cameron LNG Receiving Terminal Project, located near Hackberry Louisiana, was damaged during Hurricane Ike's September 13, 2008 landfall and storm surge. According to AK|IHI's March 5, 2009 Change Order No. CO09-262, Summary of Loss, Damage occurred to materials and equipment already permanently incorporated into the Project. In addition, other equipment intended for use in the Project, including certain valves, pumps and pipes, was located at the Project Site but not yet installed. These parts and materials were staged in several areas near their intended positions in the Project. Damage was also sustained to certain other parts and equipment temporarily stored in an off-site pre-staging area approximately 1.5 miles away at a rented storage facility. Hurricane Ike's storm surge flooded the Project Site and off-site storage facility, resulting in certain Damage caused by exposure to saltwater and debris. AK|IHI also claimed that debris and/or silt deposited by the storm surge rendered the facility's ship berths too shallow for their intended use, necessitating additional dredging.

21. Insurers engaged the adjusting firm of McLarens Young International ("MYI") to investigate and adjust the Loss.

22. On March 12, 2009, on behalf of Insurers, MYI advised Sempra and AK|IHI that the Policy would respond to the Loss, subject to all applicable limits, sublimits, deductibles,

600088

exclusions or other applicable policy provisions. A copy of the March 12, 2009, letter is attached as Exhibit B.

23. On May 5, 2009, on behalf of Insurers, MYI advised Sempra and AK|IHI of the Insurers' coverage position regarding the claim:

> ...the Insurers have determined that the direct physical damage to property insured caused by the landfall and associated storm surge of Hurricane Ike constitute an "occurrence" under the Policy because Hurricane Ike was a covered Named Windstorm that caused direct physical loss, damage or destruction to property insured. As a result, the Insurers have presently determined that direct physical damage to property consisting of pipes, valves, motors and other similar parts, equipment, and materials, as defined by the Policy, is covered under the Policy, subject to the application of applicable deductibles, sublimits and quantum verification. In addition, the Insurers have presently determined that other damage which was specifically contemplated by the Policy and added as individual extensions to the coverage provided, including Debris Removal and Associated Costs, Professional Fees (except fees incurred preparing the claim), Expediting Expenses and Airfreight, and Additional Import and Customs Duties which are caused directly by Hurricane Ike and the associated storm surge may also be covered losses, subject to applicable deductibles, sublimits, and quantum verification.
>
> With respect to the costs claimed for surveying and re-dredging the ship berths, the Insurers have presently determined that such costs that are directly attributable to Hurricane Ike's landfall and storm surge may fall within the exception to Exclusion 12.b. of the Policy, because such costs would be "accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy." The key issue here in the view of the Insurers would be the ability of you to demonstrate through available information and documentation that the silting which necessitated the surveying and re-dredging was caused directly by Hurricane Ike and not as a result of prior unrelated events, including Hurricane Rita, the Mississippi River flood and/or Hurricane Gustav. Additionally, the Insurers note that the original construction schedule for the Project contemplated maintenance dredging in months 37 and 38 of the Project schedule, and the Insurers would request confirmation from you that the claimed costs for re-dredging would be outside of and in addition to the scheduled maintenance dredging.
>
> The Insurers have also determined that the Policy provides no coverage for claims arising from the delay in completion of the Project or the delay in the facility's startup. As you are aware, the Policy contains no delay in completion endorsement, and therefore the Policy will not respond to these types of claims. In addition, these portions of the claim would constitute consequential losses as

contemplated by Exclusion 4 of the Policy and are thus expressly excluded from coverage. Further, any other consequential losses, including but not limited to, equipment lease extensions and/or attorneys' fees incurred in extending any lease, are also expressly excluded. In addition, any portion of the claim which includes a "contingency" is not covered by the Policy.

A copy of the May 5, 2009, letter is attached as Exhibit C.

24. The Policy provides the following applicable Deductible for Named Windstorm: "2% of the value at risk subject to a minimum of US$5,000,000 each and every loss in respect to Named Windstorm and Flood." The Insurers and Insureds have agreed that the Deductible amount for this loss is US$9,000,000. A copy of the June 1, 2009, Sworn Statement in Proof of Loss is attached as Exhibit D.

25. On October 9, 2009, Sempra assigned its rights as Loss Payee under the Policy to AK|IHI. A copy of the assignment is attached as Exhibit E.

26. A substantial portion of AK|IHI's claims can be attributed to increased costs of craft labor to complete the Project, idle labor, soft costs and "the additional costs caused by the encumbrance of the Project's construction schedule due to the additional work." *See* March 5, 2009 Change Order No. CO09-262, Summary of Loss, Executive Summary, attached as Exhibit F. These items do not constitute direct physical Damage to Insured Property, but rather loss of use and other consequential losses not directly caused by Hurricane Ike.

27. On October 27, 2009, MYI again presented AK|IHI with Insurers' position that "the Policy does not provide coverage for delay in completion or delay in start-up, soft costs, or any other time element coverage, but instead is limited to direct physical damage only, except for the 14 specific extensions set forth in the Policy," and "the Policy expressly excludes from coverage 'Any loss of use or any other consequential loss.'" Accordingly, MYI advised AK|IHI that specific portions of its claim referenced in various Change Orders submitted by AK|IHI

600088

7

totaling US$20,965,024.52 are not covered by the Policy. A copy of the October 27, 2009 letter from MYI to AK|IHI and Sempra is attached as Exhibit G.

28. On December 2, 2009, in response to the October 27, 2009 MYI letter, AK|IHI issued a letter to MYI setting forth its position that: "... all of the change orders discussed in your letter are costs incurred by AK|IHI to replace, repair or make good Insured Property that was damaged by Hurricane Ike and, as such, are covered under the Policy." A copy of the December 2, 2009 letter from AK|IHI to MYI is attached as Exhibit H.

29. In addition to the parties' dispute regarding loss of use and consequential loss, a dispute exists regarding application of the time limitation contained in the definition of Occurrence in the Policy.

30. The Policy provides the following definition of Occurrence:

Wherever the word occurrence appears in this Policy it shall mean any occurrence or series of occurrences consequent upon or attributable to one (1) source or original cause.

It is agreed that all Damage to the Insured Property occurring during any one (1) period of seventy-two (72) consecutive hours during the Period of Insurance directly caused by named windstorm ... shall be deemed to have been caused by a single occurrence and therefore constitute one (1) loss for the purposes of this Policy.

The Insured shall select the time from which any such period shall commence but no two (2) such selected periods shall overlap. Whichever period of seventy-two (72) consecutive hours is used for the purpose of this clause shall also be used for the purpose of any Deductible provisions applicable to this Section of the Policy.

(hereafter "72-Hours Clause")

31. The Sworn Statement in Proof of Loss executed by AK|IHI on November 2, 2009, states the time and origin of the loss as: "Named Windstorm losses directly caused by Hurricane

600088

8

Ike's landfall and storm surge the hour of 2:10 a.m. on the 13th day of September, 2008." A copy of the November 2, 2009, Sworn Statement in Proof of Loss is attached as Exhibit I.

32. Insurers engaged the services of hydrologist Christopher B. Burke of Christopher B. Burke Engineering, Ltd., to analyze AK|IHI's claims related to repair of physical Damage to the Marine Terminal Basin, including dredging of increased silt deposited in the Marine Terminal Basin floor on September 13, 2008, and the increased siltation rate occurring during the following seventy-two (72) consecutive hours, through September 16, 2008.

33. AK|IHI did not complete the repairs to the Marine Terminal Basin and perform the final maintenance dredging required by their contract with Sempra until July 2009—more than nine months after Hurricane Ike made landfall.

34. In the October 27, 2009, letter to AK|IHI, MYI advised that because the dredging-related claim included removal of silting that occurred in the Marine Terminal Basin during the period of September 16, 2008 through mid-July 2009, AK|IHI had apparently not considered application of the 72-Hours Clause to their claim. *See* Exhibit G.

35. In the December 2, 2009, letter, AK|IHI responded that:

> AK|IHI respectfully disagrees that it failed to take into account the 72-hour clause in connection with the submission of the dredging claim. As AK|IHI understands the 72-hour clause, it deems that there is "a single occurrence" for "all Damage" occurring during a 72-hour period "caused by named windstorm, tempest, flood or earth movement." AK|IHI further understands that, by deeming a single occurrence in those circumstances, the 72-hour clause makes clear that there is only one occurrence (and only one deductible) when two or more covered risks combine to cause loss during a 72-hour period. In this case, Insurers have agreed that there is only one occurrence relating to Hurricane Ike and, as such, there is no dispute over the 72-hour clause.
>
> AK|IHI's dredging claim is based on silting that was caused by Hurricane Ike. The definition of "Occurrence" does not limit coverage for AK|IHI's dredging claim to silting in a 72-hour period caused by Hurricane Ike. Instead, AK|IHI believes it is entitled to coverage for any and all silting caused by Hurricane Ike whether or not that silting occurred during or after any 72-hour period.

600088

*See* Exhibit H.

36. Insurers' position is that *with respect to this loss* "all Damage to the Insured Property occurring during any one (1) period of seventy-two (72) consecutive hours" means that Damage to the Insured property, whether in the form of siltation increasing the level of the Marine Terminal Basin floor, Damage to riprap on the protective slope, Damage to pipes already permanently installed in the Project, or any other direct physical Damage caused by Hurricane Ike must have occurred to Insured Property during the period of 72 consecutive hours after Hurricane Ike made landfall and chosen by Insureds.

37. Any direct physical Damage to the Insured Property occurring outside the designated 72 consecutive hours constitutes a separate Occurrence or loss under the Policy subject to a separate Deductible.

38. The Insurers have made, or are currently in the process of making, unallocated payments totaling approximately US$11,800,000, net of the US$9,000,000 deductible, and have advised AK|IHI that all but a small amount of the remaining portions of the claim are not included in and/or excluded from coverage under the Policy.

39. AK|IHI's claim exceeds US$44,000,000.

## V. COMPLAINT TO COMPEL ARBITRATION

40. Insurers repeat and re-allege paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. The Policy issued by Insurers contains a valid and enforceable arbitration provision. *See* Exhibit A at p. 19.

42. Insurers are making a written demand upon AK|IHI to resolve the disputed issues through arbitration proceedings.

600088

10

43. Because the arbitration provision is valid and enforceable, and the disputes between Insurers and AK|IHI are subject to the arbitration provision, Insurers request that the Court order AK|IHI to arbitrate their disputes with Insurers pursuant to 9 U.S.C. § 201 et seq., the New York Convention, and 9 U.S.C. §4 of the FAA.

## VI. ALTERNATIVE REQUESTS FOR DECLARATORY JUDGMENT

### COUNT I
### DECLARATORY JUDGMENT
### (Loss of Use and/or Consequential Loss)

44. Insurers repeat and re-allege paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. The Policy does not provide coverage for any losses resulting from AK|IHI's loss of use of the Project Site after Hurricane Ike or any other consequential loss, which represents a substantial portion of the amount claimed by AK|IHI.

46. An actual, substantive and justiciable controversy exists between the parties concerning whether, and to what extent, the Policy provides insurance coverage for amounts claimed by AK|IHI which the Insurers maintain are (1) not incurred to repair or replace direct physical Damage to Insured Property or (2) are excluded from coverage by the express language contained in the Policy. The parties accordingly have a direct, substantial, and present interest in having the Policy construed.

47. Pursuant to 28 U.S.C. §§ 2201 and 2202, Insurers are entitled to a declaration that:

  a) The Policy language is clear and unambiguous.

  b) The insurance coverage provided by the Policy is limited to all risk of direct physical Damage to the Insured Property while at the Project Site by any cause

600088

11

not excluded and the fourteen (14) enumerated extensions of coverage in the Policy.

c) The Policy does not provide coverage for any other Damage, including business interruption, contingent business interruption, extra expense, soft costs, delay in completion, or delay in startup.

d) Exclusion 4 of the Policy excludes all claims by AK|IHI incurred because of its loss of use of the Project Site during the time spent cleaning up and repairing the direct physical Damage to the Insured Property.

e) Exclusion 4 of the Policy excludes all claims by AK|IHI for consequential losses defined as "Losses not directly caused by damage, but rather arising from results of such damage."[2]

## COUNT II
## DECLARATORY JUDGMENT
### (Application of 72-Hours Clause to Dredging Claims)

48. Insurers repeat and re-allege paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Any Damage occurring to the Insured Property outside the designated 72 consecutive hours of the current loss would constitute a separate Occurrence under the Policy subject to a separate Deductible.

50. An actual, substantive and justiciable controversy exists between the parties concerning application of the 72-Hours Clause to AK|IHI's claim for losses relating to dredging in the Marine Terminal Basin. The parties accordingly have a direct, substantial, and present interest in having the Policy construed.

---

[2] Black's Law Dictionary (6th ed. 1990).

600088

51. Pursuant to 28 U.S.C. §§ 2201 and 2202, Insurers are entitled to a declaration that any claim for direct physical Damage occurring to the Insured Property outside the designated 72 consecutive hours constitutes a separate Occurrence and/or loss, as defined by the Policy, and would be subject to a separate Deductible.

## VII. REQUEST FOR RELIEF

**WHEREFORE**, Insurers respectfully request that the Court:

1. Order that AK|IHI be required to submit all disputes with Insurers to binding arbitration pursuant to the provisions of the Policy;

2. Alternatively, Insurers request that the Court enter an Order:

   a. Declaring that the Policy language is clear and unambiguous;

   b. Declaring that the insurance coverage provided by the Policy is limited to all risk of direct physical Damage to the Insured Property while at the Project Site by any cause not excluded and the fourteen (14) enumerated extensions of coverage in the Policy;

   c. Declaring that the Policy does not provide coverage for any other Damage, including Business Interruption, Contingent Business Interruption, Soft Costs, Extra Expense, Delay in Completion, or Delay in Startup;

   d. Declaring that Exclusion 4 of the Policy excludes all amounts incurred by AK|IHI because of its loss of use of the Project Site during the time spent cleaning up and repairing the direct physical Damage to the Insured Property;

   e. Declaring that Exclusion 4 of the Policy excludes all claims by AK|IHI for consequential losses defined as "Losses not directly caused by damage, but rather arising from results of such damage";

600088

13

f. Declaring that under the plain language of the Policy, any direct physical Damage to the Insured Property caused by Hurricane Ike that occurred outside the designated 72 consecutive hours constitutes a separate Occurrence and/or loss, as defined by the Policy, subject to a separate Deductible;

g. Declaring that Insurers have no further obligations under the Policy with respect to any and all claims for Damage caused by Hurricane Ike;

h. Awarding to Insurers such other further and additional relief as they may be entitled, including their attorneys' fees and costs incurred in connection with this suit; and

i. Award such other further and additional relief as is just and proper.

This the 4th day of February, 2010.

Respectfully submitted,

**CARROLL WARREN & PARKER PLLC**

BY: /s/ Myles A. Parker

Myles A. Parker
Attorney-in-charge
TX Bar No. 24054570; S.D.TX Bar No. 375843
CARROLL WARREN & PARKER PLLC
Post Office Box 1005
Jackson, Mississippi 39215-1005
Phone: 601/592-1010
Fax: 601/592-6060

**ATTORNEYS FOR PLAINTIFFS**
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA; ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD.; ALLIANZ GLOBAL RISKS US INSURANCE CO.; COMMONWEALTH INSURANCE CO.; NAVIGATORS MANAGEMENT COMPANY, INC.; and ARCH SPECIALTY INSURANCE CO.

600088