# PROPERTY INSURANCE

**POLICY OF ALL RISK PROPERTY INSURANCE INCLUDING MACHINERY BREAKDOWN
EFFECTED WITH ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES LIMITED
HAMILTON, BERMUDA**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

*Words and phrases which appear in all capital letters have the special meanings set forth
in Section VIII. Definitions of the POLICY.*



## Subscription Policy

**POLICY NUMBER:**    **L0022B1A05**

**INSURED NAME:**    **Sempra Energy and its subsidiaries, Cameron LNG, including its
shareholders and subsidiaries, if any;**

**INSURED'S ADDRESS:**   101 Ash St. HQ05A
San Diego, CA 92101-3017

**Item 2:**   **POLICY PERIOD**: from the 15th day of September, 2005 until the 16th day
of December, 2008 both days at 12:01 A.M. Standard
Time at the Insured Address above.

**Item 3:**   **Policy Premium:**   $317,761 (18% AEGIS Participation) part of $1,765,338

**Item 4:**   **POLICY TERRITORY**: This policy cover the within the fifty states
comprising the United States of America and the
District of Columbia.

**Item 5:**   **INSURED LOCATION (S):**

Cameron Parish, Louisiana, 2.25 miles north of Hackberry, Louisiana, and
approximately 15 miles south of Lake Charles, Louisiana, near the coast of the Gulf
of Mexico, or elsewhere in the State of Louisiana in connection with the project but
specifically including the project laydown yard located approximately 1,000 feet
north of the Project site as well as temporary offsite warehouse storage within a 25
mile radius of the Project site.

**EXHIBIT**

*A*

**Item 6:**     **Limits of Insurance:**

      **A.** Per Occurrence Limit of Insurance: $72,000,000 (18% AEGIS
          Paticipation) part of $400,000,000 excess of $500,000.

**Item 7:  Deductible:  As per Policy Form**

**Item 8:     Loss Payee:**

**It is agreed that the loss payee of all settlements hereon will be Sempra Energy or such
other payee as shall be decided at the discretion.**

IN CONSIDERATION of the Insured having agreed to pay the Insurers the premium, the
Insurers agree to indemnify the Insured in the manner and to the extent as hereinafter provided.

The Insurers agree that subject to the terms, exclusions, provisions and conditions contained
herein or endorsed hereon the Insurers will indemnify the Insured in the manner and to the extent
hereinafter provided.

IN WITNESS whereof the undersigned acting on behalf of and under the authority of the Insurers
has hereunder subscribed his name.

Please read this Policy and ensure that it is in accordance with your requirements.

Countersigned at Jersey City, New Jersey

On   _____

AEGIS Insurance Services, Inc.

By   _____
             Authorized Representative

## POLICY SCHEDULE

**THE INSURED:**

1. Sempra Energy and its subsidiaries, Cameron LNG, including its shareholders and subsidiaries, if any;

   Collectively referred to as The Principal;

   And/or any other joint venture partner in the Cameron LNG Receiving Terminal Project as they are now or may in the future exist;

   And

2. Aker Kvaerner/IHI, a General Partnership comprised of Aker Kvaerner, Inc., a Delaware Corporation, and IHI Inc., a Delaware Corporation;

   And

   The General Partnership's affiliates, its joint ventures, its respective directors, officers, employees (including agency personnel), servants, agents and invitees, and all subcontractors of each and every tier;

3. All suppliers, subsuppliers and vendors of each and every tier but only for their manual activities at the Project Site;

4. Consultants and engineers of each and every tier but only for their manual activities at the Project Site.

**THE PROJECT:** The design, engineering, procurement, supply, delivery, erection, construction, installation, commissioning and performance testing and initial operations of **THE CAMERON LNG RECEIVING TERMINAL PROJECT IN CAMERON PARISH, LOUISIANA, UNTIED STATES OF AMERICA** including all associated and/or ancillary works in connection therewith.

**THE PROJECT SITE:** Cameron Parish, Louisiana, 2.25 miles north of Hackberry, Louisiana, and approximately 15 miles south of Lake Charles, Louisiana, near the coast of the Gulf of Mexico, or elsewhere in the State of Louisiana in connection with the Project but specifically including the Project laydown yard located approximately 1,000 feet north of the Project site as well as temporary offsite warehouse storage within a 25 mile radius of the Project site.

**PERIOD OF INSURANCE:** September 15, 2005, at 12:01 a.m., to December 16, 2008, at 12:01 a.m., both at local time of the insured property (inclusive of ninety [90] days energization, commissioning and performance testing) or until (1) acceptance or takeover by Project owner; (2) placing of Project into Commercial operation; whichever occurs earlier.

**Extensions:**

Extensions to the construction period (not exceeding sixty [60] days) automatically granted at terms, not exceeding pro rata, to be agreed by all subscribing underwriters.

Extensions to the energization, commissioning and performance testing period beyond December 15, 2008 (not exceeding ninety [90] days) automatically granted at additional premium charged at a rate not to exceed 200% of the Project rate per month or part thereof (payable at commencement of the extension period).

Extensions to the construction period or the energization, commissioning and performance testing period to run consecutively or concurrently.

All further extensions to be agreed by all subscribing underwriters at terms to be agreed.

**SUM INSURED:** On the Contract Works:   US$400,000,000 (Estimated Project Replacement Value).

**DEDUCTIBLES:**
1. US$500,000 each and every loss in respect of:

   a.. energization, commissioning and performance testing;

   b. defects in workmanship, materials, design, plan and specification;

   c. feedstock, fuels, consumables and products held in storage tanks and inventory;

   d. subsidence, collapse, earthquake, earth movement or volcanic eruption;

   e. damage to piers, jetties or other property being constructed in, on, over or adjacent to coastal or tidal waters and/or river crossings;

2. 2% of the value at risk subject to a minimum of US$5,000,000 each and every loss in respect of Named Windstorm and Flood.

3. US$1,000,000 each and every loss in respect of Wet Works.

4. US$500,000 each and every loss in respect of all other perils.

**TERRITORIAL LIMITS:** Worldwide in connection with the Project.

**APPLICABLE LAW:** New York

**JURISDICTION:**      United States of America

**DEPOSIT PREMIUM:**   US$1,765,338 calculated at 0.441% applied to the estimated Project Value of US$400,000,000 and adjustable at expiry.

Premium payable at inception.

Premium extensions pro rata except testing and commissioning extensions not to exceed 200% of the project rate.

The Deposit Premium is adjustable in accordance with General Condition 9 of the Policy.

# POLICY DEFINITIONS

### 1.  Occurrence

Wherever the word occurrence appears in this Policy it shall mean any occurrence or series of occurrences consequent upon or attributable to one (1) source or original cause.

It is agreed that all Damage to the Insured Property occurring during any one (1) period of seventy-two (72) consecutive hours during the Period of Insurance directly caused by named windstorm, tempest, flood or earth movement shall be deemed to have been caused by a single occurrence and therefore constitute one (1) loss for the purposes of this Policy.

The Insured shall select the time from which any such period shall commence but no two (2) such selected periods shall overlap.  Whichever period of seventy-two (72) consecutive hours is used for the purposes of this clause shall also be used for the purposes of any Deductible provisions applicable to this Section of the Policy.

### 2.  The Project Site

Any place within the Territorial Limits to which the Insured Property is delivered or where work is to be done (other than manufacturers' premises).

### 3.  The Insured Property

All permanent and temporary works, preliminary works (including associated works and Site mobilization) executed or in the course of execution, including materials, goods, parts, excavations, spare parts, inventory, consumables and all other things, equipment of whatsoever nature used for or intended to be used in the Project, including electricity, gas and water connections, all designs, drawings, specifications and plans to be provided, together with computer and building services equipment, all other parts or units or equipment, plant and machinery of whatever nature the property of the Insured or for which they are responsible (other than contractor's or subcontractor's constructional plant and equipment) while on or adjacent to the Project Site or elsewhere within the Territorial Limits, and all associated and ancillary works connected therewith built, constructed, erected, supplied, installed, repaired, revised or otherwise or in the course of being built, constructed, erected, supplied, installed, repaired, revised, or otherwise, commissioned, performance tested and brought into full operation.

Materials shall include all raw and shaped materials, including catalysts (but only for the actual cash value of the catalyst at the time that indemnifiable Damage is sustained), as well as finished parts, units, installations, machinery, constructions and/or property of every kind and description and/or parts, units, installations, machinery, constructions and/or other property of every kind and description in course of construction and/or while being otherwise worked upon.

4.  **Energization, Commissioning and Performance Testing**

    Energization, Commissioning and Performance Testing shall mean the firing or energization of any equipment or commissioning and performance testing involving the introduction of feedstock for which the unit is intended. Energization, Commissioning and Performance Testing shall not mean any functional testing including any hydrostatic pneumatic or similar testing.

5.  **Damage**

    Damage shall mean physical damage, physical loss or physical destruction.


# THE CONTRACT WORKS

This Policy is affected for the protection and benefit of the parties named in the Schedule and their directors, employees or agents (even if their names are not specifically mentioned) and covers the interests subject to the terms and conditions of this Policy.

## The Contract Works – Damage to Insured Property

This insurance will pay the cost of replacing or repairing or making good the Insured Property or any part thereof while at the Project Site physically lost, physically destroyed or physically Damaged in any direct manner and by any cause whatsoever not hereinafter excluded.

In the event of Damage to any item of the Insured Property for which the Insurers are liable this Policy shall extend to include:

1.  **Named Windstorm and Associated Storm Surge**

    US$50,000,000 each and every loss and in the term aggregate but increasing to US$85,000,000 per occurrence and in the term aggregate at June 1, 2006.

2.  **Earthquake Shock or Volcanic Action (except California)**

    US$100,000,000 each and every loss and in the term aggregate.

3.  **California Earthquake**

    This Policy excludes coverage for loss or damage arising out of Earthquake Shock in the State of California.

4. **Flood**

   US$100,000,000 each and every loss and in the annual aggregate.

5. **Debris Removal and Associated Costs**

   Costs and expenses necessarily incurred by the Insured in:

   a.  Removal and disposal of debris detritus and material foreign to the insured operations;

   b.  Dismantling and/or demolishing of any part of the Insured Property including temporary storage of dismantled or demolished property;

   c.  Shoring up propping and/or protecting Insured Property whether Damaged or not;

   d.  The cost of repairing or clearing drains sewers service mains and the like and/or dewatering;

   e.  The provision and maintenance of lights, audible warnings, barriers, hoardings and the like;

   f.  Regaining access to original working conditions;

   as the result of Damage that is indemnifiable by this Policy;

   The maximum liability of the Insurers for Debris Removal shall not exceed 25% of the loss with a maximum of US$10,000,000 each and every loss.

6. **Professional Fees**

   Architects, surveyors, legal, consulting engineers and other fees necessarily incurred by the Insured for the replacement and/or reinstatement as the result of Damage that is indemnifiable by this Policy (but not for preparing any claim).  The maximum liability of the Insurers for Professional Fees shall not exceed US$1,000,000 each and every loss, excluding claims preparation costs.

7. **Expediting Expenses and Airfreight**

   Costs and expenses incurred by the Insured in respect of overtime rates and wages, express delivery including airfreight, hire of additional labor or plant and equipment as the result of Damage that is indemnifiable by this Policy.

   The maximum liability of the Insurers for Expediting Expenses shall not exceed 15% of loss, with a maximum of US$10,000,000 each and every loss.

8. **Plans and Documents**

   Costs and expenses necessarily and reasonably incurred to rewrite or redraw plans, documents and records (including computer records and programs) necessary for the Project as the result of Damage that is indemnifiable by this Policy.

   The maximum liability of the Insurers in respect of Plans and Documents shall not exceed US$1,000,000 each and every loss (reproduction costs only).

9. **Feedstocks, Fuels, Consumables and Product in Storage and in Inventory**

Costs and expenses necessarily and reasonably incurred to replace feedstocks, fuels, consumables and product in storage tanks and in inventory arising as the result of Damage that is indemnifiable by this Policy.

The maximum liability of the Insurers in respect of feedstocks, fuels, consumables and product in storage tanks and in inventory shall not exceed US$25,000,000 each and every loss, subject to values being reported to underwriters and premium paid per the Project rate.

10. **Additional Import and Customs Duties**

Customs and excise duties, import taxes, freight, insurance and similar charges as the Insured may incur in respect of the procurement of goods, materials and services for the reinstatement, replacement, repair, restoration or re-commissioning as the result of Damage that is indemnifiable by this Policy to the extent that such customs and excise duties are included within the Sum Insured.

11. **Repeat Tests and Trials**

In the case of Damage recoverable under this Policy and in consequence thereof it is necessary to repeat any test or trial, the Insurers shall pay the expenses of the repeated test or trial.

12. **EDP Equipment/Media**

This Policy covers loss or damage to Data Processing property caused by an insured peril.

a.  Data processing property means:

(1) Electronic data processing equipment including component parts; and

(2) Software (including media) meaning:

i)  all forms of converted data and instruction vehicles employed in the insured's operations; and

ii)  material on which the data is recorded such as tapes, discs, drums, cells or other data processing, recording or storage media.

b.  At the time of loss, the basis of valuation will be as stated below:

(1) EDP Equipment:  The replacement cost.

(2) EDP Media:  The cost of blank materials plus the actual reproduction cost including the costs and expenses of researching, reproducing and returning such property to the same condition in which it was prior to loss, including the Insured's overhead, and customary and normal profit should the Insured participate in the repair or replacement of the damaged property.

The maximum liability of the Insurers in respect of EDP Equipment/Media shall not exceed US$5,000,000 each and every loss.

### 13. Pollutant Clean-Up – Real and Personal Property

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of contaminants or pollutants from uninsured property consisting of land, water or any other substance in or on land at the Project Site if the release, discharge or dispersal of contaminants or pollutants is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of contaminants or pollutants from such property:

a.  At any location insured for Personal Property only.

b.  At any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or Miscellaneous Unnamed Location coverage provided by this Policy.

c.  When the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

The maximum liability of the Insurers in respect of Pollutant Clean-up shall not exceed US$500,000 each and every loss and in the annual aggregate.

### 14. Fire Fighting Fees

This Policy covers reasonable and necessary fire department fire fighting charges imposed as a result of responding to a fire in, on or exposing the insured property including the costs incurred of restoring and recharging fire protection systems following an insured loss and the costs incurred for the water used for fighting a fire in, on or exposing the insured property.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

The maximum liability of the Insurers in respect of Fire Fighting Fees shall not exceed US$5,000,000 each and every loss.

## SPECIAL CONDITIONS

### Piling, Foundation and Retaining Wall Works

It is agreed that subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, the Insurer shall not indemnify the Insured in respect of expenses incurred:

1.  In replacing or rectifying piles or retaining wall elements:

a.  That have become misplaced or misaligned or jammed during their construction;

b.  That are lost or abandoned or sustain Damage during driving or extraction unless such abandonment is a direct consequence of other physical loss or damage for which indemnity is provided for by this Policy;

c.  That have become obstructed by jammed or Damaged piling equipment or casings;

2.  For rectifying disconnected or de-clutched sheet piles;

3.  For rectifying any leakage or infiltration of material of any kind unless such leakage or infiltration is a direct result of other physical loss or damage for which indemnity is provided by this Policy;

4.  As a result of any piles or foundation elements having failed to pass a load bearing test or otherwise not having reached their designed load bearing capacity unless such failure is the direct result of other physical loss or damage for which indemnity is provided for by this Policy;

5.  For reinstating profiles or dimensions.

This Condition shall not apply to Damage caused by natural hazards.  The burden of proving that such Damage is covered shall be upon the Insured.

### Storage of Materials

It is agreed that subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, that  with regard to the temporary storage of materials intended for use and construction of the Project, such materials shall be stored outside of the fifty (50) year flood plain.

# EXCLUSIONS

This Policy does NOT insure the following:

1.  All costs rendered necessary by defects of material workmanship design plan or specification and should Damage occur to any portion of the Insured Property containing any of the said defects the cost of replacement or rectification which is hereby excluded is that cost which would have been incurred if replacement or rectification of the Insured Property had been put in hand immediately prior to the said Damage.

    For the purpose of this Policy and not merely this exclusion it is understood and agreed that any portion of the Insured Property shall not be regarded as Damaged solely by virtue of the existence of any defect of material workmanship design plan or specification.

2.  Loss of or damage to cash, bank notes, treasury notes, checks, money order or stamps.

3.  Loss of or damage to contractor's plant and equipment, sheds and tools (other than equipment forming part of or intended to form part of the temporary and/or permanent works or which is owned and/or operated and/or the responsibility of the Insured "1" in the Schedule and forms part of final declared values.

4.  Any loss of use or any other consequential loss.

5.  a.  The cost of replacing, repairing or rectifying that portion of the Insured Property rendered necessary by its own wear and tear or gradual deterioration provided always that this exclusion shall not apply to other portions of the Insured Property Damaged as a result of such wear tear or gradual deterioration.

   b.   The cost of replacing, repairing or rectifying that portion of the Insured Property rendered necessary by Damage consisting of or caused by any form of corrosion or the action of which accelerates or otherwise aggravates another condition or mechanism howsoever the same may arise provided always that this exclusion shall not apply to other portions of the Insured Property Damaged in consequence of such Damage.

6.   Unexplained disappearance or shortage discovered during periodical inventory taking.

7.   The amounts stated as the Deductibles in the Schedule.

8.   Damage to catalysts directly due to testing, commissioning or operation of the Insured Property unless such Damage is caused by an indemnifiable occurrence which is not excluded by this Policy. By way of clarification it is understood and agreed that Damage to catalysts caused by fire, impact, dropping, mishandling and the like is covered by this Policy.

9.   Damage to feedstocks, fuels, consumables and product in storage tanks and in inventory unless accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy.

10.  Damage to product in process.

11.  Damage to refractory linings or brickwork from the time of first application of heat unless accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy.

12.  In respect of Damage to piers, jetties or other property being constructed in, on, over or adjacent to coastal or tidal waters:

   a.   Loss of fill unless accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy;

   b.   The cost of re-dredging or re-profiling of a dredged trench or area within the defined area of the project unless accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy;

   c.   Damage due to the normal action of the sea in its usual state or level at any time of the year which however shall not be held to include Damage arising out of cyclones, tempests, tidal waves, tsunami or names windstorm.

13.  Loss or destruction of or Damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss or any legal liability of whatsoever nature; directly or indirectly caused by or contributed to, by or arising from:

   a.   Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel (for the purpose of this exclusion combustion shall include any self-sustaining process of nuclear fission);

   b.   Nuclear weapons materials.

14.  Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the

following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

a.  War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

b.  Any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to "a" and/or "b" above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

15. a.  Damage, destruction, distortion, erasure, corruption or alteration of electronic data from any cause whatsoever (including but not limited to computer virus) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

Electronic data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

Computer virus means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature.  Computer virus includes, but is not limited to, "Trojan horses," "worms" and "time or logic bombs."

b.  However, in the event that a peril listed below results from any of the matters described in paragraph "a" above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Period of Insurance to the Insured Property directly caused by such listed peril.

Listed Perils:
    Fire
    Explosion
    Machinery Breakdown

16. a. Penalties (including liquidated Damages) for noncompletion or delay in completion or for noncompliance with contract conditions;

    b. Performance guarantees.

17. Damage or liability caused by the willful act or willful neglect of the Insured's senior management at the Project Site.

18. Damage to the Insured Property, from the time of first introduction of hydrocarbons into the plant, resulting from a deliberate act or deliberate non-compliance with prescribed start-up/operating procedures, as a result of a collective decision taken at senior managerial level ("Vice President" or above), other than as would be in accordance with accepted engineering practice at the time of taking of the decision.

19. 1. Notwithstanding any other terms or conditions, this Policy does not insure against:

    a. Any cost or expense incurred to clean up, remove or remediate any Fungi; or

    b. Any cost or expense incurred to test for, monitor, or assess the existence, concentration or effects of Fungi.

  2. Definition

For the purpose of this endorsement, Fungi shall mean any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances, products, or by-products produced by, released by, or arising out of the current or past presence of Fungi.

20. Loss, damage, costs or expenses in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever.

Nevertheless, if a fire arises directly or indirectly from seepage and/or pollution and/or contamination, any loss or damage insured under this Policy arising directly from that fire shall (subject to the terms, conditions and limitations of this Policy) be covered. However, if the insured property is the subject of direct physical loss or damage for which the Insurers have paid or agreed to pay, then this Policy (subject to its terms, conditions, and limitations) insures against direct physical loss of or damage to the property insured hereunder caused by resulting seepage and/or pollution and/or contamination.

The Insured shall give notice to the Insurers of intent to claim no later than twelve (12) months after the date of the original physical loss or damage.

Notwithstanding the provisions of the preceding exclusion or any provision respecting seepage and/or pollution and/or contamination and/or debris removal and/or cost of clean up in this Policy, in the event of direct physical loss of or damage to the property insured hereunder, this Policy (subject otherwise to its terms, conditions and limitations including, but not limited to, any applicable Retained Amount) also insures, within the sum insured:

    a. Expenses reasonably incurred in removal of debris of the property insured hereunder destroyed or damaged from the premises of the Insured; the dismantling and/or demolishing of and the shoring up or propping of the property insured hereunder destroyed or damaged; removing from the premises of the Insured debris of any property not insured under this Policy;

and/or

    b.  Cost of clean up at the premises of the Insured, made necessary as a result of such direct loss or damage; provided that this Policy does not insure against the costs of decontamination or removal of water, soil or any other substance on or under such premises.

It is a condition precedent to recovery under this Clause that the Insurers shall have paid or agreed to pay for direct physical loss of or damage to the property insured hereunder unless such payment is precluded solely by the operation of any Retained Amount and that the Insured shall give notice to the Insurers of intent to claim for cost of removal of debris or cost of clean up no later than twelve (12) months after the date of such physical loss or damage.

21. In consideration of the premium charged for this Policy, it is hereby understood and agreed that this contract shall not apply to and does not cover any actual or alleged liability whatsoever for any claim or claims in respect of loss or losses directly or indirectly arising out of, resulting from or in consequence of, or in any way involving asbestos, or any materials containing asbestos in whatever form or quantity.

## MEMORANDA

### 1.  Waiver of Subrogation

In the event of any claim settlement under this Policy, the Insurers agree to waive all rights of subrogation against the following:

(i)  Aker Kvaerner, Inc. (as Construction Contractor), its affiliates, its joint ventures, its respective directors, officers, employees (including agency personnel), servants, agents and invitees, and all subcontractors of each and every tier.

(ii)  Ishikawajima Heavy Industries, Inc. (as Engineering and Procurement Contractor), its affiliates, its joint ventures, its respective directors, officers, employees (including agency personnel), servants, agents and invitees.

### 2.  Inland Transit and Off-Site Storage

Subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, this Policy extends to cover Damage to locally procured materials and equipment lost or Damaged while in Transit by any means of conveyance, no matter how loaded, and on any inland waterway including loading and unloading, or while in storage, at any place in Cameron Parish or elsewhere in the states of Louisiana and Texas, if and insofar as such Damage is not more specifically covered by any Marine Cargo policy.

The maximum liability of the Insurers in respect of Inland Transit and Off-Site Storage shall not exceed US$10,000,000 each and every loss.

### 3.  Automatic Increase Clause

If at any time during the Period of Insurance the value of the Insured Property (shown as the Sum Insured in the Schedule) exceeds the Estimated Project Value at inception, then the Sum Insured shall be increased to a figure not exceeding in all 115% of the Sum Insured at

inception subject to payment of the appropriate additional premium in accordance with General Condition 9 of this Policy.

### 4.   50 / 50 Clause

Upon unloading at the Project Site, unpacked materials are to be inspected by the Insured for possible Damage sustained during transit.  In the case of containerized or packed goods which are to be left in the container or packing, the container or packing is to be visually inspected for signs of possible Damage to the goods.  If any sign of Damage is visible, the goods themselves are to be unpacked and inspected.  Any Damage discovered is to be immediately reported to the Marine Cargo Insurers.

Where the container or packing of the goods shows no sign of Damage to the goods having been sustained during transit to the Project Site, any Damage to the goods that becomes apparent upon their unpacking will be assigned to the Marine Cargo Policy or this Policy depending on whether it can be established whether Damage was caused before or after arrival of the goods at the Project Site.  Where it is not possible to establish whether the Damage was caused before or after arrival of the goods at the Project Site, it is agreed that settlement will be made 50/50 by the Marine Cargo Insurers and the Insurers hereon.

### 5.   Off-Site Fabrication

Subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, this Policy extends to cover Damage to the Insured Property described in the Schedule while being worked upon or fabricated or prefabricated at any place within the Territorial Limits (other than the Project Site or at any manufacturer's premises).

The maximum liability of the Insurers in respect of Off-Site Fabrication shall not exceed US$10,000,000 each and every loss.

### 6.   Local Authorities

Subject otherwise to the terms, exclusion and conditions contained herein or endorsed hereon, this Policy extends to indemnify the Insured for additional costs and expenses in reinstatement of the Insured Property as may be incurred solely by reason of the necessity to comply with the stipulations of building or other regulations or bylaws of any public authority or similar regulations prevailing in the United States of America and/or the State of Louisiana provided that such additional costs and expenses are incurred as the result of Damage that is indemnifiable by this Policy.

Provided however that this Policy does not extend to cover:

a.   Additional costs and expenses that would have been incurred or required to make good the Damage to a condition equal to a condition when new had the necessity to comply with such stipulations not arisen.

b.   Undamaged property.

The maximum liability of the Insurers in respect of this Local Authorities Clause shall not exceed US$5,000,000 each and every loss.

7. **Free Issue Materials**

Subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, the Insurers shall indemnify the Insured for Damage to materials or property provided for the purposes of the Project by the Principal or any party on behalf of the Principal. Provided that the value of such property is included in the Final Project Price to be declared to the Insurers in accordance with General Condition 9 (Premium Adjustment) of this Policy.

8. **Temporary Repairs**

Subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, the Insurers shall indemnify the Insured for additional costs and expenses incurred to carry out temporary repairs to Insured Property as the result of Damage that is indemnifiable by this Policy in order to enable continuation of the Project.

The maximum liability of the Insurers in respect of Temporary Repairs shall not exceed US$25,000,000 each and every loss.

9. **Preventative Measures**

Subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, the Insurers shall indemnify the Insured for additional costs and expenses incurred in the event of Damage to Insured Property to prevent, reduce, minimize or protect the Insured Property against any further Damage or potential Damage to the Insured Property, provided that:

a.  It can be demonstrated by the Insured that such additional costs and expenses are incurred in order to avoid further costs to the Insurers;

b.  Such additional costs and expenses incurred, paid or payable by the Insured are notified to the Insurers as soon as reasonably practicable following the implementation of any measures taken in order to avoid further loss, Damage or expense.

The maximum liability of the Insurers in respect of Preventative Measures shall not exceed US$5,000,000 each and every loss.

10. **Preliminary Works and Foundation Works**

Subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, the Insurers shall indemnify the Insured for Damage to Preliminary Works and Foundation Works and similar works carried out in connection with the Project prior to inception of the Period of Insurance shown in the Schedule.

Provided always that the value of Preliminary Works and Foundation Works is included within the Sum Insured for the purposes of calculating the Deposit Premium shown in the Schedule of this Policy.

### 11. Other Interests

Subject otherwise to the terms, exclusions and conditions contained herein it is agreed that should any of the Insured Parties be required by agreement with other Parties to cause the interest of such other parties in any of the Insured Property to be protected in accordance with the said agreement such interest shall be advised to the Insurers for their agreement.

### 12. Reasonable Profit

Insurers agree a reasonable allowance for profit and overhead in any claim settlement under this Policy to the extent that such allowance for profit and overhead is included within the Sum Insured.

### 13. Output Improvement

Notwithstanding anything contained herein to the contrary, where any Insured property constitutes property which has a measurable function, capability or output, which is capable of replacement with a new item or items with similar capability or output, then such property shall be valued for insurance purposes as follows, and the value(s) for settlement of any claim in respect thereof shall be on the same basis:

Where any lost, destroyed or Damaged property is to be replaced by an item or items which have the same or a lesser total function, capability or output, then the insurable value of such lost, destroyed or Damaged property is the new installed cost of such replacement item or items as would give the same total function, capability or output as the lost, destroyed or Damaged property.

Where any Damaged property is to be replaced by an item or items which have a greater total function, capability or output and the new installed cost of such replacement property is no greater than the replacement value of the Damaged property, then no deductions shall be made from any claim for the improved function, capability or output of the replacement property.

If any Damaged property is to be replaced by an item or items which have a greater total function, capability or output and the new installed cost of such replacement property is greater than the replacement value of the Damaged property, then the insurable value of such lost, destroyed or Damaged property is that proportion of the new installed cost of the replacement item or items which the output of the Damaged property bears to the output of the replacement item or items. The difference between the insurable value as defined and the new installed cost of the replacement item or items shall be borne by the Insured.

Provided that where any Damage Insured Property is to be repaired, the Insurers shall pay the costs of restoration of such Damaged property to a condition substantially the same as, but not better or more extensive than, its condition when new and the liability of Insurers shall not exceed the sum representing the cost which the Insurers could have been called upon to pay if such Insured Property had been wholly destroyed.

**GENERAL CONDITIONS**

1. **Multiple Insureds Clause**

   a. It is agreed that if the Insured described in the schedule comprises more than one (1) insured party each operating as a separate and distinct entity then (save as described in this Multiple Insureds Clause) cover herein shall apply in the same manner and to the same extent as if individual policies had been issued to each such insured party provided that the total liability of the Insurers to all of the insured parties collectively shall not exceed the sums insured and limits of indemnity including any inner limits set by memorandum or endorsement stated in this Policy.

   b. It is agreed that any payment or payments by Insurers to any one (1) or more such insured parties shall reduce to the extent of that payment Insurers' liability to all such parties arising from any one (1) event giving rise to a claim under this Policy and (if applicable) in the aggregate.

   c. It is further understood that the insured parties will at all times preserve the various contractual rights and agreements entered into by the insured parties and the contractual remedies of such parties in the event of Damage.

   d. It is further understood and agreed that Insurers shall be entitled to avoid liability to or (as may be appropriate) claim Damages from any of the insured parties in circumstances of fraud, material misrepresentation, material nondisclosure or breach of any warranty or condition of this Policy each referred to in this clause as a vitiating Act.

   e. It is however agreed that (save as described in this Multiple Insureds Clause) a Vitiating Act committed by one (1) insured party shall not prejudice the right to indemnity of any other insured party who has an insurable interest and who has not committed a Vitiating Act.

   f. Insurers hereby agree to waive all rights of subrogation which they may have or acquire against any insured party except where the rights of subrogation or recourse are required in consequence of or otherwise following a Vitiating Act in which circumstances Insurers may enforce such rights notwithstanding the continuing or former status of the vitiating party as an insured.

2. **Claims Notification and Procedure**

   On the happening of any event giving rise or likely to give rise to a claim under this Policy coming to the knowledge of the Insured "1" in the Schedule the Insured "1" in the Schedule shall:

   a. Take precautions to prevent any further Damage;

   b. Give notice thereof to the Insurers or their nearest appointed representative as soon as possible;

   c. Take all practical steps to recover any Insured Property, including, in the event of property lost stolen or willfully Damaged, the giving of immediate notice to the police;

   d. Preserve any things which might prove necessary or useful by way of evidence in connection with any claim, and so far as may be reasonably practicable, no alteration or repair shall, without the consent of the Insurers, be made after the event until the Insurers shall have had an opportunity of inspection;

e. When called upon to do so deliver to the Insurers or their representative a statement in writing of all particulars and details reasonably practicable of the Property affected and the value thereof and the Damage thereto and furnish all such vouchers, proofs, explanations and other evidence as may be reasonably required by the Insurers together with a statutory declaration if required in verification of the statement;

f. At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy, and
b. · The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a. Pay its chosen appraiser; and
b. Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.

### 5.  Primary Insurance

Subject otherwise to Memoranda "4" of this Policy (50/50 clause), it is agreed that this Policy provides primary cover for the Insured and that in the event of Damage covered by this Policy which is also covered under any other policy of insurance taken out by the Insured the Insurers will indemnify the Insured as if such other policy of insurance did not exist and the Insurers waive rights of recovery, if any, against the Insurers of such other policy of insurance.

### 6.  Change in Risk

Subscribing Underwriter, will inform the Insured "1" in the Schedule if, in their belief, there is a material change in risk and if necessary any proposed modification to the Policy.  Such modification will be restricted to a reasonable adjustment in premium only, unless:

a.  There is a requirement to extend the construction period by more than six (6) months in excess of the original Period of Insurance or if there is any requirement to extend energization, commissioning and performance testing period by more than three (3) months in excess of the original Period of Insurance; or

b.  There is a works stoppage on the Project Site in excess of sixty (60) days (per General Condition "12"); or

c.  There is a fundamental change in the methodology of execution of the Project;

d.  In which case a reasonable change in terms and conditions may be proposed.  A change in the terms and conditions may also be proposed by the Insurers as an alternative to the premium only adjustment, the choice of which to apply being at the discretion of the Insured "1" in the Schedule.

If the Insured "1" in the Schedule and the Insurers are unable to agree as to whether the change constitutes a material change in the risk or the reasonableness of the modification to the Policy the matter shall be referred to an expert to be appointed by the parties.  Unless the parties otherwise agree, the expert shall be a person with not less than ten (10) years experience of international insurance business, having been engaged in such business or in advising on such business in a professional capacity.  However, if the parties cannot agree, the expert shall be appointed by [TBD].

The expert alone shall determine all questions of procedure and evidence in the hearing of this dispute, and all costs for the holding thereof shall be paid by the parties and in the manner as directed by the expert.  The expert shall apply the laws of the country as defined under the Disputes Clause.  The decision of the expert shall be given in writing, with reasons, and both parties hereby agree to be bound by the decision given in accordance with the above provisions

### 7.  Payments on Account

It is agreed that at the request of the Insured the Insurers will, subject to liability having been accepted and application of the applicable Deductible, provide payment on account in respect of any claim subject always to compliance with the terms and conditions of this Policy.

The Insured shall provide to the Insurers such evidence as may be required by the Insurers to provide such payments on account, for example but not limited to proof of loss with supporting documentation, bills and accounts, for agreement and approval.

### 8. Reasonable Precautions

The Insured shall take all reasonable precautions in the selection of labor and for the safety of the Insured Property and shall at all times maintain in efficient condition all plant, machinery and equipment used in connection with the Project. The Insured shall also take and cause to be taken all reasonable precautions against accidents to prevent and minimize Damage and to ensure that all plant, machinery and equipment requiring inspection under any statute or order shall be so inspected.

### 9. Premium Adjustment

The premium hereon is a Deposit calculated at the agreed rate applied to the estimated Project value at inception.

As soon as reasonably practicable after the completion of the Project, the Insured shall advise the Insurers of the final insurable Project value. The Deposit Premium will be adjusted by applying the agreed premium rate to the final Project value and any difference between the final and deposit premiums will be paid to the Insurers or repaid to the Insured as the case may be.

### 10. Nominated Loss Adjuster

The following companies are the nominated loss adjusters in respect of all losses:

**Ewan Cresswell**
*Integra Technical Services Ltd.*
Wakefield House
41, Trinity Square
London EC3N 4DJ   U.K.
Tel:      +44 20 7481 8181
Cell:     +44 77 7197 0970
Email:  integracresswell@compuserve.com

**Rex Andrews**
*Rex Andrews & Associates, Inc.*
11210 Steeplecrest Drive, Suite 120
Houston, Texas 77065
Tel:      281 955 1055
Cell:     713 826 5232
Email:  rex@rexandrews.com

**John Roberts**
*McLarens Young International*
10235 West Little York, Suite 170
Houston, Texas 77040
Tel:      713 856 9227
Fax:      713 856 9228
Email:  john.roberts@mclarensyoung.com

### 11. Loss Payee

It is agreed that the loss payee in respect of all settlements hereon will be Sempra Energy or such other payee as shall be decided at the discretion of Sempra Energy.

## 12. Work Stoppages

In the event that work on the Project or any part thereof should stop for any reason and the Insured provides notice thereof, the insurance provided by this Policy shall continue without interruption for a period of up to sixty (60) days. The Insurers shall be entitled to amend premium terms and conditions.

## 13. Non-Cancellation

This Policy shall not be cancelled except:

a.  In the event of nonpayment of premium, in which event the Insurers undertake to provide written notice to the Insured no less than ten (10) days prior to the date of such proposed cancellation; or

b.  For statutorily required reasons as set forth in the state insurance code of the State of Louisiana.

## 14. Currency Conversion

For Damage covered in any currency other than the currency stated in the Schedule the rate of exchange for payment shall be at a rate prevailing at the actual time of payment.

# ENDORSEMENT NO. 1

| | |
|---|---|
| Named Insured: | Sempra Energy |
| Coverage: | Construction All Risk Coverage Form |
| Project: | Cameron LNG Receiving Terminal<br>Cameron Parish, Louisiana |
| Willis Reference No.: | WRS051190108 |
| Policy Term: | September 15, 2005 – December 16, 2008 |

## GENERAL CHANGE ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that effective September 15, 2005, the policy to which this endorsement is attached is amended as follows.

**Exclusion #12c:** "names windstorm" *is amended to* "named windstorm."

**Exclusion #13a:** "nuclear waste from the combustion" *is amended to* "nuclear waste or from the combustion."

**Exclusion #22:**   *The following exclusion is added:*

22. It is hereby understood and agreed that Ocean Marine Cargo coverage is excluded in this Policy for Insured's Cameron LNG Receiving Terminal.

**General Condition #6 (Change in Risk):**

**Paragraph five:** "d. In which case" *is amended to* "In which case."

**Paragraph six, last sentence:** "However, if the parties cannot agree, the expert shall be appointed by [TBD]" *is amended to* "However, if the parties cannot agree, the expert shall be appointed by a judge or a court of record in the State of New York."

*All other terms and conditions remain unchanged.*

*Attached to and forming a part of Endorsement No. 1 to Construction All Risk Policy*

Insurer: _ACIA Insurance Services LNG_

Insurer Policy No.: _L 022 #2405_

Policy Limit:  US$400,000,000

Participation: _17_ % (US$ _72,000,000_ )

By: _[signature]_

Authorized Representative for the Company

Date Signed: _1/13/0_

# ENDORSEMENT NO. 2

| | |
|---|---|
| Named Insured: | **Sempra Energy** |
| Coverage: | Construction All Risk Coverage Form |
| Project: | Cameron LNG Receiving Terminal<br>Cameron Parish, Louisiana |
| Willis Reference No.: | WRS051190108 |
| Policy Term: | September 15, 2005 – December 16, 2008 |

## GENERAL CHANGE ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that *effective September 15, 2005*, the policy to which this endorsement is attached is amended as follows.

## POLICY SCHEDULE:

*The following is amended:*

### Territorial Limits

"Worldwide in connection with the Project." *is amended to* "Worldwide in connection with the Project, except in any country where, prior to inception date of the Policy, the government of the United States of America has prohibited American companies from doing business."

## POLICY DEFINITIONS:

*The following definitions are added:*

6. **Flood**

   Flood shall mean waves, tide or tidal water and a general and temporary condition of complete inundation of normally dry land areas, including dewatered areas, from:

   (a) The overflow of inland or tidal waters;
   (b) The unusual and rapid accumulation or runoff of surface waters;
   (c) The rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams and similar bodies of water, whether driven by wind or not.

7. **Named Windstorm and Associated Storm Surge**

   Named Windstorm and Associated Storm Surge shall mean an atmospheric disturbance marked by sustained wind speeds of seventy-four miles per hour (74 mph) or greater or is declared by the National Weather Service to be a hurricane, typhoon or tropical cyclone, with or without precipitation, including such events as hurricane, typhoon, rainstorm, hailstorm, tornado or any combination of the foregoing events, including any resulting flood, tidal or wave action.

8. **Normal Action of the Sea**

   Normal Action of the Sea shall mean the state of the sea that manifests itself up to No. 8 on the Beaufort Wind Scale.

9. **Wet Works**

   Wet Works shall mean marine and offshore work.

## THE CONTRACT WORKS:

*The following is amended:*

4. **Flood**

*Heading only amended to* "4.  Flood (Not the Result of Named Windstorm or Associated Storm Surge)"

*The following is added:*

15. **Valuation**

At the time and place of loss, the basis of adjustment of a claim, unless otherwise endorsed or stated herein, shall be as follows:

a. Property Under Construction:  Cost to repair or replace the property lost or damaged at the time and place of loss with material of like kind and quality less betterment, including contractor's reasonable profit and overhead, but in no event to exceed the Limit of Liability; if not so replaced, then loss shall be settled on the basis of actual cash value with proper deduction for depreciation.

b. Property of Others (including items supplied by owner):  At owner's cost or other actual cash value, whichever is greater, including the contractor's charges.

c. Temporary Works:  Cost to repair or replace the property lost or damaged with material of like kind, quality and condition, but in the event not replaced, recovery will not exceed actual cash value.

*All other terms and conditions remain unchanged.*

---

*Attached to and forming a part of Endorsement No. 2 to Construction All Risk Policy*

Insurer: _AE679 Insurance Company LLC_

Insurer Policy No.: _L022 B 1A05_

Policy Limit: US$400,000,000

Participation: _18_% (US$ _72,000,000_ )

By: _____
Authorized Representative for the Company

Date Signed: _2/23/09_

# ENDORSEMENT NO. 3

| | |
|---|---|
| Named Insured: | **Sempra Energy** |
| Coverage: | Construction All Risk Coverage Form |
| Project: | Cameron LNG Receiving Terminal<br>Cameron Parish, Louisiana |
| Willis Reference No.: | WRS051190108 |
| Policy Term: | December 16, 2008 |

Effective December 16, 2008, it is hereby understood and agreed, per the policy terms and conditions the above policy is extended for a period of 60 day on a pro-rata basis for an Additional Premium of $89,309.

Premium Calculation:

$1,765,338  (Deposit Premium)  9/15/2005 to 12/16/2008 (0.44% x $400,000,000 Declared Values)
   1,186   days  (9/15/2005 to 12/16/2008)

--------------------
$    1,488   per day
x      60    days
--------------------
$  89,309    additional premium

$1,765,338/1,186 days = $1,488 per day x 60 days = 89,309

*All other terms and conditions remain unchanged.*

*Attached to and forming a part of Endorsement No. 2 to Construction All Risk Policy*

| | |
|---|---|
| Insurer: | AEGIS INSURANCE SERVICES,LTD |
| Insurer Policy No.: | L0022B1A05 |
| Policy Limit: | US$400,000,000 |
| Participation: | 18.00% US$16,076 part of $89,309 (100%) |

By: _____
   Authorized Representative for the Company

Date Signed: _____

# ENDORSEMENT NO. 4

| | |
|---|---|
| Named Insured: | **Sempra Energy** |
| Coverage: | Construction All Risk Coverage Form |
| Project: | Cameron LNG Receiving Terminal<br>Cameron Parish, Louisiana |
| Willis Reference No.: | WRS051190108 |
| Policy Term: | September 15, 2005 to December 16, 2008<br>(Policy term subsequently extended to February 14, 2009) |

Effective February 14, 2009, it is hereby understood and agreed that the above noted policy is extended for a period of seven (7) days at an additional premium to be determined. All terms and conditions are per the expiring policy.

**Information:**

The policy is being extended for 1 week in order to finalize the extension terms and conditions.

| | |
|---|---|
| Insurer: | AEGIS INSURANCE SERVICES LIMITED |
| Insurer Policy No.: | L0022B1A05 |
| Policy Limit: | US$400,000,000 |
| Participation: | 18% |
| By: | *Gary Latman*<br>(Authorized Representative for the Company) |
| Signature: | |
| Date Signed: | February 11, 2009 |

# ENDORSEMENT NO. 5

| | |
|---|---|
| Named Insured: | *Sempra Energy* |
| Coverage: | Construction All Risk Coverage Form |
| Project: | Cameron LNG Receiving Terminal<br>Cameron Parish, Louisiana |
| Willis Reference No.: | WRS051190108 |
| Policy Term: | February 21, 2009 |

Effective February 21, 2009, it is hereby understood and agreed, per the policy terms and conditions the above policy is extended to August 4, 2009 with the following amendments.

- Value adjustment to $588,600,000 for project TCV.  The extension endorsement will have a premium to final value adjustment (deposit premium basis = $588,600,000)
- Extension Premium = $3,806,226.
- Subject to the following modification to the Terms & Conditions:
  a. Wind & Flood Deductible increase from 2% min $5M, to $25M flat deductible.
  b. Named Windstorm S/L at $85MM term aggregate to remain (no reinstatement).
  c. Reduce Flood S/L to $85MM term Aggregate.
  d. Increase Testing Deductible to $1MM.
  e. Premium not adjustable unless final values increase greater than 5% of the TCV of $588,600,000
  f. $400,000,000 Policy Limit.

## Additional Premium:

$  831,573  Additional premium for the increase in Valuations
$3,806,226  Additional Premium charged for the extension period (2/21/2009 to 08/4/2009)
------------
$4,637,799  Total Additional Premium

*All other terms and conditions remain unchanged.*

*Attached to and forming a part of Endorsement No. 2 to Construction All Risk Policy*

| | |
|---|---|
| Insurer: | AEGIS Insurance Services, Ltd. |
| Insurer Policy No.: | L0022B1A05 |
| Policy Limit: | $400,000,000 |
| Participation: | 18%  US $834,804 part of $4,637,799 |

By: _____
    Authorized Representative for the Company

Date Signed: ___7/20/09_____