

**McLarens Young International**
GLOBAL CLAIMS SERVICES

10235 W. Little York Street
Suite 170
Houston, TX 77040-3253
Tel  713 856-9227
Fax  713 856-9228

March 12, 2009

Mr. Maury DeBont
Mr. Joe Risse
Mr. Mike Moreno
Sempra Energy
101 Ash Street
San Diego, California  92101

Mr. Scott Ray
Mr. Gil Madrid
Aker Kvaerner/IHI
Cameron LNG Receiving Terminal
Cameron Parish, Louisiana

Re:  Insured:           Sempra Energy and other Named Insureds

     Policy Nos.:       National Union Fire Ins. Co. of Louisiana– ST-260-9712
                        AEGIS Ins. Services, Ltd – L0022B1A05
                        Allianz Global Risks US Ins. Co. – ATO 3006580
                        Commonwealth Ins. Co. – NME1128
                        Navigators Special Risk, Inc. – 05-NSRO-1045-01
                        Arch Specialty Ins. Co. – CAR0009987

     Policy Period:     9/15/2005 – 12/16/2008

     Loss:              Hurricane Ike- CAT#60

     Loss Location:     Hackberry, LA

     Date of Loss:      09/13/2008

     MYI File No.       07.003119.MI

Gentlemen:

On behalf of National Union Fire Insurance Company of Louisiana, AEGIS Insurance Services, Ltd., Allianz Global Risks US Insurance Company, Commonwealth Insurance Company, Navigators Special Risk, Inc. on behalf of Millennium Syndicate at Lloyds #1221



EXHIBIT B

www.mclarensyoung.com

(70%) and Liberty Syndicate at Lloyds #4472 (30%), and Arch Specialty Insurance Company (collectively the "Insurers"), we are writing to advise you, Sempra Energy, Cameron LNG and Aker Kvaerner/IHI(collectively the "Insureds") of the Insurers' present position regarding the claim made for the loss suffered as a result of Hurricane Ike on or about September 13, 2008, at the Cameron LNG Receiving Terminal in Cameron Parish, Louisiana ("Loss"), and to reserve Insurers' rights under the Policy, at law, in equity, or otherwise, waiving none. The claim was submitted under the builder's risk policies identified above, effective September 15, 2005, through December 16, 2008, covering the Cameron LNG Receiving Terminal project in Cameron Parish, Louisiana (the respective separate policies of the Insurers, including all Endorsements attached thereto, are collectively referred to herein as the "Policy").

## Loss Details

This Loss relates to certain damage sustained on September 13, 2008, at Insured's Cameron LNG Receiving Terminal located in Cameron Parish, Louisiana (the "Project") as a result of Hurricane Ike's landfall and associated storm surge.

As reported, the damage occurred to certain materials and equipment already permanently incorporated into the Project. In addition, other equipment intended for use in the Project, including various valves, pumps and pipes, were located at the Project Site but not yet installed. These parts and materials were staged in several areas near their intended positions in the Project. A third category of damage occurred to parts and equipment temporarily stored in an off-site pre-staging area approximately 1.5 miles away at a rented storage facility. Hurricane Ike's storm surge flooded the Project Site and off-site storage facility, resulting in certain damage caused by exposure to saltwater and debris.

## Applicable Policy Provisions

Based upon the information presently available concerning the Loss and the related claim submitted, the Insurers have considered, among others, the following provisions of the Policy:

> **POLICY SCHEDULE**
>
> * * *
>
> **THE PROJECT:**
>
> The design, engineering, procurement, supply, delivery, erection, construction, installation, commissioning and performance testing and initial operations of **THE CAMERON LNG RECEIVING TERMINAL PROJECT IN CAMERON PARISH, LOUISIANA, UNITED STATES OF AMERICA** including all associated and/or ancillary works in connection therewith.

**THE PROJECT SITE:**

Cameron Parish, Louisiana, 2.25 miles north of Hackberry, Louisiana, and approximately 15 miles south of Lake Charles, Louisiana, near the coast of the Gulf of Mexico, or elsewhere in the State of Louisiana in connection with the Project but specifically including the Project laydown yard located approximately 1,000 feet north of the Project site as well as temporary offsite warehouse storage within a 25 mile radius of the Project site.

* * *

**DEDUCTIBLES:**

* * *

2.　　2% of the value at risk subject to a minimum of US$5,000,000 each and every loss in respect of Named Windstorm and Flood.

* * *

**POLICY DEFINITIONS**

1.　　**Occurrence**

Wherever the word occurrence appears in this Policy it shall mean any occurrence or series of occurrences consequent upon or attributable to one (1) source or original cause.

It is agreed that all Damage to the Insured Property occurring during any one (1) period of seventy-two (72) consecutive hours during the Period of Insurance directly caused by named windstorm ... shall be deemed to have been caused by a single occurrence and therefore constitute one (1) loss for the purposes of this Policy.

* * *

2.　　**The Project Site**

Any place within the Territorial Limits to which the Insured Property is delivered or where work is to be done (other than manufacturers' premises).

3. **The Insured Property**

All permanent and temporary works, preliminary works (including associated works and Site mobilization) executed or in the course of execution, including materials, goods, parts, excavations, spare parts, inventory, consumables and all other things, equipment of whatsoever nature used for or intended to be used in the Project, including electricity, gas and water connections, all designs, drawings, specifications and plans to be provided, together with computer and building services equipment, all other parts or units or equipment, plant and machinery of whatever nature the property of the Insured or for which they are responsible (other than contractor's or subcontractor's constructional plant and equipment) while on or adjacent to the Project Site or elsewhere within the Territorial Limits, and all associated and ancillary works connected therewith built, constructed, erected, supplied, installed, repaired, revised, or otherwise or in the course of being built, constructed, erected, supplied, installed, repaired, revised, or otherwise, commissioned, performance tested and brought into full operation.

Materials shall include all raw and shaped materials, including catalysts (but only for the actual cash value of the catalyst at the time that indemnifiable Damage is sustained), as well as finished parts, units, installations, machinery, constructions and/or property of every kind and description and/or parts, units, installations, machinery, constructions and/or other property of every kind and description in course of construction and/or while being otherwise worked upon.

* * *

5. **Damage**

Damage shall mean physical damage, physical loss or physical destruction.

* * *

7. **Named Windstorm and Associated Storm Surge**[1]

Named Windstorm and Associated Storm Surge shall mean an atmospheric disturbance marked by sustained wind speeds of seventy-four miles per hour (74 mph) or greater or is declared by the National Weather Service to be a hurricane, typhoon or tropical cyclone, with or without precipitation, including such events as hurricane, typhoon, rainstorm, hailstorm, tornado or any combination of the foregoing events, including any resulting flood, tidal or wave action.

8. **Normal Action of the Sea**

Normal Action of the Sea shall mean the state of the sea that manifests itself up to No. 8 on the Beaufort Wind Scale.

9. **Wet Works**

Wet Works shall mean marine and offshore work.

## THE CONTRACT WORKS

\* \* \*

**The Contract Works – Damage to Insured Property**

This insurance will pay the cost of replacing or repairing or making good the Insured Property or any part thereof while at the Project Site physically lost, physically destroyed or physically Damaged in any direct manner and by any cause whatsoever not hereinafter excluded.

In the event of Damage to any item of the Insured Property for which the Insurers are liable this Policy shall extend to include:

1. **Named Windstorm and Associated Storm Surge**

   US$50,000,000 each and every loss and in the term aggregate but increasing to US$85,000,000 per occurrence and in the term aggregate at June 1, 2006.

\* \* \*

---

[1] Policy Definitions 7, 8, and 9 were added by Endorsement No. 2.

5. **Debris Removal and Associated Costs**

   Costs and expenses necessarily incurred by the Insured in:

   a. Removal and disposal of debris detritus and material foreign to the insured operations;

   b. Dismantling and/or demolishing of any part of the Insured Property including temporary storage of dismantled or demolished property;

   c. Shoring up propping and/or protecting Insured Property whether Damaged or not;

   d. The cost of repairing or clearing drains sewers service mains and the like and/or dewatering;

   e. The provision and maintenance of lights, audible warnings, barriers, hoardings and the like;

   f. Regaining access to original working conditions;

   as the result of Damage that is indemnifiable by this Policy;

   The maximum liability of the Insurers for Debris Removal shall not exceed 25% of the loss with a maximum of US$10,000,000 each and every loss.

6. **Professional Fees**

   Architects, surveyors, legal, consulting engineers and other fees necessarily incurred by the Insured for the replacement and/or reinstatement as the result of Damage that is indemnifiable by this Policy (but not for preparing any claim). The maximum liability of the Insurers for Professional Fees shall not exceed US$1,000,000 each and every loss, excluding claims preparation costs.

7. **Expediting Expenses and Airfreight**

   Costs and expenses incurred by the Insured in respect of overtime rates and wages, express delivery including airfreight, hire of additional labor or plant and equipment as the result of Damage that is indemnifiable by this Policy.

The maximum liability of the Insurers for Expediting Expenses shall not exceed 15% of loss, with a maximum of US$10,000,000 each and every loss.

\* \* \*

### 10. Additional Import and Customs Duties

Customs and excise duties, import taxes, freight, insurance and similar charges as the Insured may incur in respect of the procurement of goods, materials and services for the reinstatement, replacement, repair, restoration or re-commissioning as the result of Damage that is indemnifiable by this Policy to the extent that such customs and excise duties are included within the Sum Insured.

\* \* \*

## SPECIAL CONDITIONS

\* \* \*

### Storage of Materials

It is agreed that subject otherwise to the terms, exclusions and conditions contained herein or endorsed hereon, that with regard to the temporary storage of materials intended for the use and construction of the Project, such materials shall be stored outside of the fifty (50) year flood plain.

## EXCLUSIONS

This Policy does NOT insure the following:

\* \* \*

4. Any loss of use or any other consequential loss.

\* \* \*

12. In respect of Damage to piers, jetties or other property being constructed in, on, over or adjacent to coastal or tidal waters:

\* \* \*

    b.    The cost of re-dredging or re-profiling of a dredged trench or area within the defined area of the project unless accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy;

    c.    Damage due to the normal action of the sea in its usual state or level at any time of the year which however shall not be held to include Damage arising out of cyclones, tempests, tidal waves, tsunami or named windstorm.

\* \* \*

16.    a.    Penalties (including liquidated Damages) for noncompletion or delay in completion or for noncompliance with contract conditions;

\* \* \*

## GENERAL CONDITIONS

\* \* \*

2.    **Claims Notification and Procedure**

On the happening of any event giving rise or likely to give rise to a claim under this Policy coming to the knowledge of the Insured "1" in the Schedule the Insured "1" in the Schedule shall:

    a.    Take precautions to prevent any further Damage;

    b.    Give notice thereof to the Insurers or their nearest appointed representative as soon as possible;

\* \* \*

    d.    Preserve any things which might prove necessary or useful by way of evidence in connection with any claim, and so far as may be reasonably practicable, no alteration or repair shall, without the consent of the Insurers, be made after the event until the Insurers shall have had an opportunity of inspection;

e.  When called upon to do so deliver to the Insurers or their representative a statement in writing of all particulars and details reasonably practicable of the Property affected and the value thereof and the Damage thereto and furnish all such vouchers, proofs, explanations and other evidence as may be reasonably required by the Insurers together with a statutory declaration if required in verification of the statement;

* * *

7. **Payments on Account**

It is agreed that at the request of the Insured the Insurers will, subject to liability having been accepted and application of the applicable Deductible, provide payment on account in respect of any claim subject always to compliance with the terms and conditions of this Policy.

The Insured shall provide to the Insurers such evidence as may be required by the Insurers to provide such payments on account, for example but not limited to proof of loss with supporting documentation, bills and accounts, for agreement and approval.

**Insurers' Current Position**

At this point in the investigation and adjustment process, based on their current understanding of the facts, and after review of the above provisions, it is the Insurers' present position that the Policy will respond to the Loss subject, of course, to all applicable limits, sublimits, deductibles, exclusions or other applicable policy provisions, including, without limitation, those referenced above. We have been instructed by the Insurers to proceed with the investigation and adjustment of this matter accordingly subject to a full and complete reservation of rights as explained herein.

As you know, Insurers have engaged certain consultants to assist in determining the extent and amount of the covered Loss, as well as the applicable Deductible amount under the Policy. Appointed accountants Buchanan Clarke Schlader, LLP made certain requests for documents regarding the Loss on January 27, 2009, and February 2, 2009. I requested further information and documents regarding the Loss in my letter dated February 5, 2009. The requests for information and support of the claim made to date should not be considered our final requests, and further requests for information will be made as our investigation and adjustment continues.

We look forward to receiving all requested information, and invite you to submit any further documents or information you believe will support your claim.

In the event that additional facts or information that would impact this analysis become available in the future, the Insurers reserve the right to supplement this letter, and otherwise reserve unto themselves all rights under the Policy, at law, in equity, or otherwise, waiving none.

Sincerely,

Greg Presswood
McLarens Young International
Executive General Adjuster
Vice President / Branch Manager
10235 W. Little York, Suite 170
Houston, TX 77040-3253
(713) 856-9227 Office
(713) 856-9228 Fax
(281) 630-4946 Cell
greg.presswood@mclarensyoung.com

cc:   Interested Insurers
      Mr. Doug Shockley, Willis of Texas