**McLarens Young International**
GLOBAL CLAIMS SERVICES

10235 W. Little York Street Suite 170
Houston, TX 77040-3253
Tel  713 856-9227
Fax 713 856-9228

May 5, 2009

Mr. Maury DeBont
Mr. Joe Risse
Mr. Mike Moreno
Sempra Energy
101 Ash Street
San Diego, California 92101

Mr. Scott Ray
Mr. Gil Madrid
Aker Kvaerner/IHI
Cameron LNG Receiving Terminal
Cameron Parish, Louisiana

Re:   Insured:            Sempra Energy and other Named Insureds

      Policy Nos.:         National Union Fire Ins. Co. of Louisiana– ST-260-9712
                           AEGIS Ins. Services, Ltd – L0022B1A05
                           Allianz Global Risks US Ins. Co. – ATO 3006580
                           Commonwealth Ins. Co. – NME1128
                           Navigators Special Risk, Inc. – 05-NSRO-1045-01
                           Arch Specialty Ins. Co. – CAR0009987-00

      Policy Period:       9/15/2005 – 12/16/2008

      Loss:                Hurricane Ike- CAT#60

      Loss Location:       Hackberry, LA

      Date of Loss:        09/13/2008

      MYI File No.         07.003119.MI

Gentlemen:

Further to our recent correspondence, this letter is written on behalf of the above Insurers in order to update you regarding the current coverage position of the Insurers in this matter in connection with the below identified coverage issues. We issue this letter in an effort to keep you informed on the Insurers' ongoing analysis of these issues, and it is subject to the



www.mclarensyoung.com

reservation of rights set forth herein and in all previously issued reservations of rights which have been provided to you.

I. Insurers' Coverage Position

The Insurers have determined that Hurricane Ike's storm surge flooded the Project Site and off-site storage facility, resulting in certain physical damage caused by exposure to saltwater and debris. Specifically, physical damage occurred to limited materials and equipment already permanently incorporated into the Project, and to other materials and equipment intended for use in the Project, including certain valves, pumps and pipes, which were located at the Project Site but not yet installed. These parts and materials were staged in several areas near their intended positions in the Project. Damage was also sustained to certain other parts and equipment temporarily stored in an off-site pre-staging area approximately 1.5 miles away at a rented storage facility. The Insurers also understand that the claim includes re-dredging of the Project's two ship berths which you contend was necessitated by debris and/or silt deposited by the storm surge. In addition to the direct physical damage to property, the Insurers understand that portions of the claim include increased craft labor and other cost increases and "additional costs caused by the encumbrance of the Project's construction schedule due to the additional work."[1]

Based on this understanding, the Insurers have determined that the direct physical damage to property insured caused by the landfall and associated storm surge of Hurricane Ike constitute an "occurrence" under the Policy because Hurricane Ike was a covered Named Windstorm that caused direct physical loss, damage or destruction to property insured. As a result, the Insurers have presently determined that direct physical damage to property consisting of pipes, valves, motors and other similar parts, equipment and materials, as defined by the Policy, is covered under the Policy, subject to the application of applicable deductibles, sublimits and quantum verification.[2] In addition, the Insurers have presently determined that other damage which was specifically contemplated by the Policy and added as individual extensions to the coverage provided, including Debris Removal and Associated Costs, Professional Fees (except fees incurred preparing the claim), Expediting Expenses and Airfreight, and Additional Import and Customs Duties which are caused directly by Hurricane Ike and the associated storm surge may also be covered losses, subject to applicable deductibles, sublimits and quantum verification. With regard to these claimed items, the Insurers invite you to provide all supporting documentation, invoices, bills and accounts, as required by the Policy, evidencing your claim for each of the above categories of damages.

With respect to the costs claimed for re-dredging the ship berths, the Insurers have presently determined that such costs that are directly attributable to Hurricane Ike's landfall and storm surge may fall within the exception to Exclusion 12.b. of the Policy, because such costs would be "accompanied by Damage caused by an indemnifiable occurrence otherwise covered by this Policy." The key issue here in the view of the Insurers is your ability to demonstrate through

---

[1] See March 5, 2009, Change Order No. CO09-262, Summary of Loss, Executive Summary, Item 1.6.
[2] The calculation of the deductible for the loss is the subject of prior correspondence, to which we currently await a response and/or agreement on the amount of same.

available information and documentation that the silting which necessitated the re-dredging was caused directly by Hurricane Ike and not as a result of prior unrelated events, including Hurricane Rita, the Mississippi River flood and/or Hurricane Gustav. Additionally, the Insurers note that the original construction schedule for the Project contemplated maintenance dredging in months 37 and 38 of the Project schedule, and the Insurers request specific confirmation from you that the claimed costs for re-dredging are outside of and in addition to the scheduled maintenance dredging.

The Insurers have also determined that the Policy provides no coverage for claims arising from the delay in completion of the Project or the delay in the facility's startup. As you are aware, the Policy contains no delay in completion endorsement, and therefore will not respond to these types of consequential claims. In addition, these portions of the claim would constitute consequential losses as contemplated by Exclusion 4 of the Policy and are thus expressly excluded from coverage. Further, any other consequential losses, including but not limited to, equipment lease extensions and/or attorneys' fees incurred in extending any lease, are also expressly excluded. In addition, any portion of the claim which includes a "contingency" is not covered by the Policy.

If you disagree with the coverage positions set forth herein, the Insurers invite you to outline your position in writing and to provide all information/documentation in support of your position, and it will be given due consideration.

II. Request for Payment on Account

In reference to Aker's March 25, 2009, letter requesting an interim payment in the amount of $4 million, the Insurers have requested that we refer you to the Policy's General Conditions Section, No. 7. Payments on Account, which provides that any payment on account is "subject to liability having been accepted and application of the applicable Deductible...." As previously advised, we are not presently in a position to recommend a payment on account to Insurers until such time as the applicable Deductible amount has been agreed. Once the Deductible amount is agreed, we will then be able to determine whether the amount of the covered claim that has been established by supporting documentation (i.e. vouchers, invoices, man-hour reports, etc. -- as opposed to estimates) exceeds the Deductible in an amount sufficient to warrant an interim payment at this time. In this regard, please provide all additional supporting documentation requested in my letter of April 20, 2009, my email of April 24, 2009 and Jay Cardarette's email of April 24, 2009, as soon as possible[3].

In an effort to resolve this issue, we propose scheduling a meeting at a time and place that is convenient for you. We can presently be available on May 12 and 13 for such a meeting. We look forward to hearing from you on this.

---

[3] We acknowledge receipt of some portion of the requested information on May 4, 2009, which is presently under review.

Neither this correspondence nor the ongoing investigation and adjustment of the claim presented waives any rights of the Insurers under the Policies, at law, in equity, or otherwise, all such rights continuing to be expressly reserved.

Very truly yours,

**MCLARENS YOUNG INTERNATIONAL**

Greg Presswood
Executive General Adjuster
Vice President/Branch Manager
Greg.presswood@mclarensyoung.com
Cell:  281-630-4946