# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

NATIONAL UNION FIRE INSURANCE CO. )
OF PITTSBURGH, PENNSYLVANIA; )
ASSOCIATED ELECTRIC & GAS )     Case No. H-10-0342
INSURANCE SERVICES LTD.; ALLIANZ )
GLOBAL RISKS US INSURANCE CO.; )
COMMONWEALTH INSURANCE CO.; )
NAVIGATORS MANAGEMENT )
COMPANY, INC.; and ARCH SPECIALTY )
INSURANCE CO., )
                                 )
                 Plaintiffs, )
    vs. )
                                   )
AKER KVAERNER/IHI, a General )
Partnership, )
                                   )
                 Defendant. )

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTS .............................................................................................................. 3

A.     Hurricane Ike Caused More than $44 Million of Damages to AK/IHI's Construction Work at the Cameron LNG Project in Cameron Parish, Louisiana ............... 3

B.     The Louisiana Coverage Lawsuit ................................................................. 4

C.     The Insurers Respond to the Louisiana Lawsuit by Attempting to Invoke the CAR Policy's Non-Binding Appraisal Clause and Filing This Lawsuit ................. 5

D.     The Insurers' Purported Removal of the Louisiana Coverage Lawsuit to Federal Court After Filing this Lawsuit ...................................................................... 6

ARGUMENT ................................................................................................... 7

A.     Legal Standard .......................................................................................... 7

      1.     Subject Matter Jurisdiction ............................................................... 7

      2.     Failure to State a Claim .................................................................... 8

B.     This Court Must Dismiss the Complaint to Compel Arbitration Because it Fails to State a Claim Upon Which Relief Can Be Granted and Because There is No Federal Question Jurisdiction ........................................................................................... 9

      1.     There is No Agreement to Arbitrate Coverage Disputes in the CAR Policy ....................................................................................................... 9

      2.     The Amount of Loss is Not In Dispute ............................................. 11

      3.     Conclusion ..................................................................................... 13

C.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Complaint for Declaratory Judgment Because There is No Diversity ...................................................... 13

D.     Case Law Interpreting the Declaratory Judgment and Anti-Injunction Act Bars the DJ Action ....................................................................................................... 17

E.     Alternatively, this Court Should Exercise its Broad Discretion and Decline to Hear the DJ Action ....................................................................................................... 19

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..................................................... 8

*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) ................................. 20

*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986) ................................. 8

*Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990) ....................................... 13

*Carr v. Transam Trucking, Inc.*, No. 3-07-CV-1944-BD, 2008 WL 866195
(N.D. Tex. Mar. 17, 2008) ...................................................................... 16

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ................... 8

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................... 8

*Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284 (5th Cir. 2009) .......... 10

*Employers Ins. Of Wausau v. Gulf Island Marine, Inc.*, 718 F. Supp. 17
(E.D. La. 1989) ................................................................................. 22

*Falgout v. Mid State Land & Timber Co.*, CV No. 08-5088, 2009 WL 2163162
(E.D. La. July 16, 2009) ........................................................................ 16

*First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995) ........................................ 9

*Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002) ................. 9

*Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603 (5th Cir. 1995) ...... 9

*Fort Worth & W. Ry. Co. v. The City of Fort Worth, Tex.*, No. 4:03-CV-319-Y, 2004 WL 743901
(N.D. Tex. Mar. 8, 2004) ........................................................................ 19

*Girard v. Atlantic Mut. Ins. Co.*, 198 So.2d 444 (La. App. Ct. 1967) ...................... 10

*Great Lakes Dredge & Dock Co., LLC v. Larrisquitu*, 2007 WL 2330187
(S.D. Tex. Aug. 15, 2007) ....................................................................... 19

*Hamilton v. Liverpool & London & Globe Ins. Co.*, 136 U.S. 242 (1890) .............. 10

*Hertz Corporation v. Friend*, No. 08-1107, 559 U.S. ___, (Feb. 23, 2010) .............. 14, 16

*Holt v. State Farm Lloyds*, No. 3:98-CV-1076-R, 1999 WL 261923
(N.D. Tex. Apr. 21, 1999) ............................................................................ 10, 12

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006
(5th Cir. 1998) ............................................................................................ 7

*Howery v. Allstate Ins. Co.*, 234 F.3d 912 (5th Cir. 2001) ........................ 6

*In re Culbertson*, 18 N.Y.S.2d 815 (N.Y. Sup. Ct. 1940) ......................... 10

*In the Matter of Delmar Box Co.*, 127 N.E.2d 808 (N.Y. 1955) .............. 9, 11

*International Paper Co. v. Denkman Assocs.*, 116 F.3d 134 (5th Cir. 1997) ............ 13

*J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401 (5th Cir. 1987) .......... passim

*Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371 (5th Cir. 2003) .......... 8

*Karage v. First Advantage Corp.*, No. 3:09-CV-0604-M, 2009 WL 2568261
(N.D. Tex. Aug. 19, 2009).......................................................................... 16

*Kelly v. Bergamino*, No. 3:08-CV-00887-B, 2009 WL 174131
(N.D. Tex. Jan. 23, 2009)............................................................................ 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................... 7

*McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558 (5th Cir. 1998) ....... 8

*Missouri Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983)...... 20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .... 9

*Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160
(5th Cir. 1998) ............................................................................................ 16

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000) .............. 17, 19

*Petty v. Venable, Baetjer, Howard & Civiletti*, No. Civ.1.3:02-CV-1449-D,
2002 WL 31875567 (N.D. Tex. Dec. 18, 2002) ......................................... 16

*Prien Props. LLC v. Allstate Ins. Co.*, No. 07 CV 845, 2008 WL 1733591
(W.D. La. Apr. 14, 2008)............................................................................. 10, 12

*Samuels v. Mackell*, 401 U.S. 66 (1971) .................................................. 18

*Scottsdale Ins. Co. v. Bayou Land & Marine*, No. Civ.A. 98-3668, 1999 WL 777714
(E.D. La. Sept. 30, 1999) .................................................................. 19

*Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630 (Tex. 1888) ....................... *passim*

*St. Charles Parish Hosp. Service Dist. No. 1 v. United Fire & Cas. Co.*,
CV No. 07-5924, 2010 WL 148851 (E.D. La. Jan. 13, 2010) .................................. 10

*St. Paul Ins. Co. v. Trejo*, 39 F.3d. 585 (5th Cir. 1994) ............................... 20, 21

*State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009) ................................ 10, 12

*Sterling v. Zurich Am. Ins. Co.*, No. 4:09-CV-510-A, 2009 WL 3415789
(N.D. Tex. Oct. 22, 2009) ................................................................ 16

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) .......................... 8

*Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir. 1988) ................... 17

*Torch, Inc. v. LeBlanc*, 947 F.2d 193 (5th Cir. 1991) ................................... 19

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774
(5th Cir. 1993) ......................................................................... 18, 19

*TY Equity Group v. Lee*, No. Civ.A.3:01-CV-0879-G, 2001 WL 1401392
(N.D. Tex. Nov. 7, 2001) ................................................................ 18

*United Boat Serv. Corp. v. Fulton Fire Ins. Co.*, 137 N.Y.S.2d 670
(N.Y. Sup. Ct. 1955) ................................................................... 9, 12

*Village Fair Shopping Ctr. Co. v. Sam Broadhead Trust*, 588 F.2d 431
(5th Cir. 1979) ........................................................................ 7, 16

*Wachovia Bank N.A., v. Colson*, No. 1:09-CV222-HSO-JMR, 2009 WL 1620464
(S.D. Miss. June 9, 2009) .............................................................. 18

*Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679
(Tex. Ct. App. 1996) ................................................................... 10, 12

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ................................... 7

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ....................................... 20

**Statutes**

28 U.S.C. § 1332 ....................................................................... 7, 13

28 U.S.C. § 1441 ....................................................................... 21

NATIONAL UNION FIRE INSURANCE CO. )
OF PITTSBURGH, PENNSYLVANIA; )
ASSOCIATED ELECTRIC & GAS )   Case No. H-10-0342
INSURANCE SERVICES LTD.; ALLIANZ )
GLOBAL RISKS US INSURANCE CO.; )
COMMONWEALTH INSURANCE CO.; )
NAVIGATORS MANAGEMENT )
COMPANY, INC.; and ARCH SPECIALTY )
INSURANCE CO., )
   )
       Plaintiffs, )
   vs. )
   )
AKER KVAERNER/IHI, a General )
Partnership, )
   )
       Defendant. )

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant, Aker

Kvaerner/IHI, a Texas General Partnership ("AK/IHI"), hereby moves to dismiss the Complaint

to Compel Arbitration, Alternatively for Declaratory Judgment ("Complaint"), filed by

Plaintiffs.[1]

## INTRODUCTION

Nowhere in their Complaint do Plaintiffs mention that AK/IHI filed a breach of contract,

---

[1]     Plaintiffs named in this lawsuit consist of National Union Fire Insurance Company of Pittsburgh ("National Union of Pittsburgh"), Associated Electric & Gas Insurance Services Ltd. ("AEGIS"), Allianz Global Risks US Insurance Company ("Allianz"), Commonwealth Insurance Company ("Commonwealth"), Navigators Management Company, Inc. ("Navigators") and Arch Specialty Insurance Company ("Arch"). However, the actual insurer for the insurance policy at issue is National Union Fire Insurance Company of Louisiana ("National Union of Louisiana"), *not* National Union of Pittsburgh. Also, the insurers for the insurance policy in question include Certain Underwriters at Lloyd's, London, as follows: Millennium Syndicate at Lloyd's 1121 and Liberty Syndicate at Lloyd's 4472 ("Lloyds").

bad faith, breach of duty and declaratory judgment lawsuit in Louisiana (the "Louisiana Coverage Lawsuit") two weeks *before* Plaintiffs filed this lawsuit (even though Plaintiffs were aware of that lawsuit). The Louisiana Coverage Lawsuit involves the identical insurance coverage issues and includes as parties all of the insurers for the Construction All-Risk Insurance Policy (the "CAR Policy") at issue in this lawsuit. Indeed, Plaintiffs first provided a purported arbitration demand and filed this lawsuit only *after* AK/IHI informed them of the Louisiana Coverage Lawsuit.

The CAR Policy does not contain any agreement to arbitrate coverage disputes. In fact, the Plaintiffs fail to identify any language of the CAR Policy that they claim is an agreement to arbitrate coverage disputes. Indeed, they could not identify such language because the CAR Policy does not contain any agreement to arbitrate coverage disputes. Tellingly, Plaintiffs' "alternative" claim for Declaratory Judgment (the "DJ Action") is an explicit admission that there is no agreement to arbitrate coverage disputes in the CAR Policy.

Moreover, Plaintiffs' DJ Action must also be dismissed because: (1) there is no diversity between the Plaintiffs and AK/IHI; (2) well-settled case law holds that federal courts have no authority to hear declaratory judgment actions when there is a declaratory judgment action already pending in a state court; and (3) even if there was complete diversity (which there is not), this Court should exercise its broad and unique discretion to refuse to hear the DJ Action.

Obviously, this lawsuit is a desperate and transparent attempt by Plaintiffs to end run the Louisiana Coverage Lawsuit. For these reasons, as discussed in more detail below, this Court should dismiss Plaintiffs' Complaint.

## FACTS

### A. Hurricane Ike Caused More Than $44 Million of Damage to AK/IHI's Construction Work at the Cameron LNG Project in Cameron Parish, Louisiana

In December 2004, Cameron LNG, LLC ("Owner") contracted with AK/IHI to engineer, procure and construct a liquefied natural gas receiving, storage and regasification facility in Cameron Parish, Louisiana (the "Project") for the approximate amount of $470 million (the "EPC Contract"). *See* Ex. A, Louisiana Complaint at ¶¶ 1, 21. National Union of Louisiana, AEGIS, Allianz, Commonwealth, Navigators, Arch and Lloyds (collectively "Insurers") agreed to underwrite the CAR Policy for the Project effective September 15, 2005 with an initial limit of $400 million. *See id.* at ¶¶ 8-16, 44. AK/IHI was named as an insured under the CAR Policy. *See id.* at ¶ 1, CAR Policy at 3.

Under the CAR Policy, the Insurers agreed to pay "the cost of replacing or repairing or making good the Insured Property or any part thereof while at the Project Site physically lost, physically destroyed or physically Damaged in any direct manner and by any cause whatsoever not [] excluded." *Id.* at 5. The Insurers also agreed to various extensions of coverage under the CAR Policy including, without limitation, extensions of coverage for debris removal, professional fees, expediting expenses, plans and documents and others. *See id.* at 5-6.

In or around September 2008, Hurricane Ike caused extensive and widespread damage to the Project. *See* Ex. A, Louisiana Complaint at ¶¶ 3, 25-40. Among other things, AK/IHI had to perform extensive repair, replacement, installation and/or reinstallation work on piping, valves, cryogenic shoes, insulation, road base and stone, cable tray and security fence. *See id.* at ¶¶ 28-37, 50. AK/IHI also had to undertake extensive additional dredging activities to clear more than 660,000 cubic yard of silt debris deposited by Hurricane Ike in the marine terminal. *See id.* at ¶ 38. AK/IHI further incurred professional fees and expenses as a result of the damage caused by

Hurricane Ike, including professional fees for engineers, consultants and attorneys. *See id.* at ¶ 39. To date, AK/IHI has incurred costs in an amount in excess of $44 million to replace, repair and/or make good the extensive and widespread damage to the Project. *See id.* at ¶¶ 3, 40, 52.

The Owner and AK/IHI provided immediate notice to the Insurers of the damage to the Project caused by Hurricane Ike. *See id.* at ¶ 54. And, during the period from September 2008 to June 2009, AK/IHI performed the work necessary to repair, replace and make good the damage caused by Hurricane Ike. *See id.* at ¶¶ 28-39. AK/IHI provided to Insurers extensive documentation of the costs incurred in connection with the work to repair, replace and make good the damage caused by Hurricane Ike. *See id.* at ¶¶ 40, 54, 63, 84. Despite that, Insurers have failed to pay more than $24 million of the costs incurred by AK/IHI to repair, replace and make good the damage caused by Hurricane Ike. *See id.* at ¶¶ 3, 73. Generally, Insurers have refused to pay more than $24 million on the basis of: (1) an alleged exclusion in the CAR Policy for "loss of use and other consequential loss;" and (2) a provision in the definition of occurrence in the CAR Policy that deems that damage occurring in a 72-hour period arising from certain related causes is one occurrence. *See id.* at ¶¶ 65-67; Texas Complaint at ¶¶ 23, 26, 27, 29, 30, 36, 37.

**B.      The Louisiana Coverage Lawsuit.**

As a result of the Insurers' refusal to pay more than $24 million of the costs incurred by AK/IHI to repair, replace and make good the damage caused by Hurricane Ike, AK/IHI was forced to file the Louisiana Coverage Lawsuit in the 38th Judicial District Court for the Parish of Cameron, Louisiana on January 22, 2010. *See* Ex. A, Louisiana Complaint at ¶¶ 8-16, 79-81. In addition to claims of breach of contract, bad faith and breach of duty, AK/IHI sought a declaratory judgment from the Louisiana court to "determine the rights of AK/IHI and the duties and obligations of [the Insurers and Certain Underwriters at Lloyd's, London ("Lloyds")] under

the CAR Policy."[2] AK/IHI further sought a declaration "finding that the losses, damages and expenses AK/IHI sustained from Hurricane Ike are covered under the CAR Policy." *Id.* at ¶¶ 80-81.

**C.**     **The Insurers Respond to the Louisiana Lawsuit by Attempting to Invoke the CAR Policy's Non-Binding Appraisal Clause and Filing This Lawsuit.**

The General Conditions of the CAR Policy contain a non-binding appraisal clause (the "Non-Binding Appraisal Clause"), which states in pertinent part:

> If the Insured and the Underwriters fail to agree on the *amount of loss*, each will, on the written demand of either, select a competent and disinterested *appraiser* ...
>
>             * * *
>
> The *appraisers* will first select a competent and disinterested umpire. . . The *appraisers* will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.
>
> If the *appraisers* fail to agree, they will submit their differences to an umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

Ex. A, CAR Policy at 18 (emphasis added).

On the evening of February 2, 2010 (at 5:46 p.m.), AK/IHI informed Insurers' designated loss adjustor, McLarens, that AK/IHI had commenced the Louisiana Coverage Lawsuit. *See* Ex. B. Prior to that time, Insurers had not raised any issue about the "amount of loss" or informed AK/IHI that the Insurers believed an appraisal under the Non-Binding Appraisal Clause was necessary. Two days later (on February 4, 2010 at 5:07 p.m. Eastern Standard Time), counsel for Insurers served AK/IHI with a purported Notice and Demand for Arbitration ("Demand"). *See* Ex. C. The Demand indicated that Insurers were seeking arbitration of coverage disputes.

---

[2]     AK/IHI also asserted breach of duty claims against McLarens Young International ("McLarens"), the Insurers' nominated loss adjuster under the CAR Policy, and Navigators. *See id.* at ¶¶ 3, 55-74.

*Id.* AK/IHI responded immediately by email and asked Insurers for the basis of the demand for arbitration of coverage disputes but did not receive a response to that email. *See id.* Shortly after, AK/IHI informed Insurers that there was no language in the CAR Policy providing for arbitration of coverage disputes. *See* Ex. D. To date, Insurers have failed to identify any provision of the CAR Policy that provides for arbitration of coverage disputes despite AK/IHI's several requests that Insurers identify such provision. *See id. See also* Exs. E and F.

On the same day the Insurers served their Demand (and almost two weeks after AK/IHI filed the Louisiana Coverage Lawsuit), Plaintiffs filed the Complaint in this lawsuit. Plaintiffs requested this Court issue an Order compelling arbitration of the coverage disputes arising from the CAR Policy. *See* Texas Complaint at ¶¶ 1-2, 44-51. Alternatively, in the event this Court did not compel arbitration, Plaintiffs requested "a declaration of the rights, duties, and liabilities of the parties arising from the [CAR] Policy." *Id.* at ¶ 2. Plaintiffs specifically requested a declaration that the CAR Policy "does not provide coverage for ... a substantial portion of the amount claimed by AK/IHI." *Id.* at ¶ 45. .

**D.**    **The Insurers' Purported Removal of the Louisiana Coverage Lawsuit to Federal Court After Filing This Lawsuit.**

On February 19, 2010, two weeks after filling this Lawsuit, Insurers filed a Notice of Removal purporting to remove the Louisiana Coverage Lawsuit to the United States District Court for the Western District of Louisiana, Lake Charles Division, asserting that there is federal question jurisdiction because of an arbitration agreement and claiming diversity jurisdiction. *See* Ex. G at ¶¶ 5, 8. Shortly thereafter, AK/IHI filed a Motion to Remand to the 38th Judicial District Court for the Parish of Cameron, Louisiana on the basis that there is no federal question or diversity jurisdiction. *See* Ex. H.

## ARGUMENT

The CAR Policy does not contain any language providing for arbitration of coverage disputes. Moreover, there is no diversity between Plaintiffs and AK/IHI and under well-established case law this Court should not proceed with the DJ Action because of the previously-filed and more comprehensive Louisiana Coverage Lawsuit. Further, this Court should exercise its broad discretion to refuse to hear the DJ Action.

### A.     Legal Standard.

#### 1.     Subject Matter Jurisdiction.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal subject-matter jurisdiction is limited; federal courts may entertain only those cases involving a question of federal law or those where the parties are of diverse citizenship. *See Kelly v. Bergamino*, No. 3:08-CV-00887-B, 2009 WL 174131, at *3 (N.D. Tex. Jan. 23, 2009). Where federal jurisdiction is based upon diversity of citizenship, the citizenship of each plaintiff must be diverse from the citizenship of each defendant, and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332.

Once a motion to dismiss for lack of subject-matter jurisdiction has been filed, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction over the dispute. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Howery v. Allstate Ins. Co.*, 234 F.3d 912, 916 (5th Cir. 2001). *See also Village Fair Shopping Ctr. Co. v. Sam Broadhead Trust*, 588 F.2d 431, 433 (5th Cir. 1979) ("The party invoking federal jurisdiction bears the burden of proof if diversity is challenged."). In ruling on a motion to dismiss for lack of subject-matter jurisdiction, the court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

## 2. **Failure to State a Claim.**

Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege facts in support of his claim that would entitle him to relief. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). A plaintiff is required to "plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (no requirement that conclusory allegations of law, unsupported conclusions and unwarranted inferences be accepted as true).

However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is not sufficient to state a claim or to "unlock the doors of discovery." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (internal citations omitted). Thus, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations omitted). It is improper for the court to assume that plaintiffs can prove facts they have not alleged. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 443 (5th Cir. 1986). When considering a motion to dismiss, in addition to the complaint itself, the court can review documents attached to the complaint and documents attached to the motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins*, 224 F.3d at 498-99.

**B.** **This Court Must Dismiss the Complaint to Compel Arbitration Because it Fails to State a Claim Upon Which Relief Can Be Granted And Because There Is No Federal Question Jurisdiction.**

**1.** **There is No Agreement to Arbitrate Coverage Disputes in the CAR Policy.**

In adjudicating a request to compel arbitration, courts must first determine whether the parties agreed to arbitrate the dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995). The federal policy favoring arbitration does not apply when a court determines whether an arbitration agreement exists. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). Instead, this determination is generally made on the basis of "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).

Plaintiffs did not include the language of any mandatory arbitration provision in their Complaint. Instead, they appear to be basing their purported "Complaint to Compel Arbitration" on the Non-Binding Appraisal Clause contained in the CAR Policy. *See* Texas Complaint at ¶ 41. However, under any potentially applicable law, the Non-Binding Appraisal Clause is not an agreement to arbitrate coverage disputes.

The courts of New York[3], Texas and Louisiana have all universally recognized and held that insurance policy provisions similar or identical to the Non-Binding Appraisal Clause are not agreements to arbitrate. *See, e.g., In the Matter of Delmar Box Co.*, 127 N.E.2d 808, 811 (N.Y. 1955) (provision in insurance policy "for appraisal did not constitute an agreement for arbitration..."); *United Boat Serv. Corp. v. Fulton Fire Ins. Co.*, 137 N.Y.S.2d 670, 671 (N.Y. Sup. Ct. 1955) (where appraisers made a determination of a question of liability, they exceeded

---

[3] The Policy Schedule of the CAR Policy contains the following provision: "APPLICABLE LAW: New York." *See* Ex. A, CAR Policy at 3.

the powers conferred upon them); *In re Culbertson*, 18 N.Y.S.2d 815 (N.Y. Sup. Ct. 1940) ("The distinction between an agreement to submit to arbitration and the reference of incidental matter of calculation or appraisal, the decision of which is not conclusive as to the ultimate rights of the parties, is firmly established."); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009) (appraisal clause is not an arbitration provision because "the scope of appraisals is damages, not liability"); *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 684-85 (Tex. Ct. App. 1996) (appraisers have no power to determine the cause of the damage. Their power is limited to the function of determining the money value of the property damage); *Holt v. State Farm Lloyds*, No. 3:98-CV-1076-R, 1999 WL 261923, at *2 (N.D.Tex. Apr. 21, 1999) (an appraiser may not "assess causation, coverage, or liability for damages"); *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888) (appraisal clause does not divest courts of jurisdiction and liability for the loss is to be determined by the courts); *Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284 (5th Cir. 2009) (appraisal clause "is not an arbitration"); *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, ___ F. Supp. 2d ____, 2010 WL 148851, at *2 (E.D. La. Jan. 13, 2010) (appraisal clause does not "deprive a court of jurisdiction over the matter"); *Prien Props. LLC v. Allstate Ins. Co.*, No. 07 CV 845, 2008 WL 1733591, at *2 (W.D. La. Apr. 14, 2008) (appraisal is separate and distinct from arbitration and appraisal does not address disputes regarding coverage issues); *Girard v. Atlantic Mut. Ins. Co.*, 198 So.2d 444, 447 (La. App. Ct. 1967) ("appraisal provisions work no divesture of a court's jurisdiction").

The United States Supreme Court long-ago concluded as much, stating that such appraisal clauses do "not oust[] the jurisdiction of the courts, but leav[e] the general question of liability to be determined." *Hamilton v. Liverpool & London & Globe Ins. Co.*, 136 U.S. 242,

255 (1890). As New York's highest court has recognized, there are critical differences between appraisal and arbitration clauses:

> A number of basic distinctions have long prevailed between an appraisement under the standard fire policy and a statutory arbitration. An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award, while the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, *all other issues being reserved for determination in a plenary action*.

*Delmar Box Co.*, 127 N.E.2d at 810-11 (emphasis added). Based on these critical differences, appraisal clauses do not divest courts of jurisdiction. *See Scottish Union*, 8 S.W. at 631 ("[The appraisal clause] does not divest the courts of jurisdiction, but only binds the parties to have the extent or amount of loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts.").

The Non-Binding Appraisal Clause is not an agreement to arbitrate coverage disputes. Indeed, the Non-Binding Appraisal Clause only covers one specific issue – disputes over the amount of loss. All other issues are to be addressed by a court, and AK/IHI has already filed the Louisiana Coverage Lawsuit seeking a judicial determination of those coverage issues. In fact, Plaintiffs explicitly recognize that no mandatory arbitration provision exists in the CAR Policy by also filing the DJ Action in the "alternative."

### 2.     The Amount of Loss is Not In Dispute.

Even though this Court should dismiss the Complaint because there is no basis for an order compelling arbitration, to the extent the Plaintiffs are purporting to request an appraisal under the Non-Binding Appraisal Clause, that too must fail. Indeed, the "amount of loss" is not in dispute. Plaintiffs have never alleged that any particular "amount" that the parties otherwise agree is covered under the CAR Policy is in dispute. Nor could they. The costs incurred by AK/IHI in replacing, repairing or making good the damage to Insured Property caused by

Hurricane Ike are well-documented with invoices, payroll records and other receipts that have been submitted to, and reviewed by, the Insurers. Those invoices, payroll records and other receipts establish the Actual Cash Value and replacement cost value of every item of physical loss or damage to Insured Property caused by Hurricane Ike.

Instead, what is in dispute is whether there is coverage under the CAR Policy for those costs. Tellingly, Plaintiffs allege that their disputes with AK/IHI concern whether certain type of damages, such as delay damages or consequential loss, are covered under the CAR Policy and do not allege a dispute over the amount of those costs. *See* Texas Complaint at ¶¶ 23, 26, 27, 29. Similarly, Plaintiffs allege a dispute over the meaning of a reference to a 72-hour time period in the definition of Occurrence in the CAR Policy and not the amount of costs claimed with respect to that issue. *See id.* at ¶¶ 29, 30, 37.

In short, there is no dispute in this case over any "amount" that would require an appraisal under the Non-Binding Appraisal Clause and courts have routinely held that appraisals cannot determine disputed insurance coverage issues in situations like this. *See, e.g., United Boat Serv. Corp.,* 137 N.Y.S.2d at 671 (appraisers exceed their powers if they determine liability); *State Farm Lloyds,* 290 S.W.3d at 889 (appraisers address damage questions and courts address liability questions); *Wells,* 919 S.W.2d at 684-85 (appraisers' power is limited to determining the value of the property damage); *Holt,* 1999 WL 261923, at *2 (an appraiser exceeds his authority by determining causation, coverage or liability for damage); *Scottish Union,* 8 S.W. at 631 (appraiser "only" to determine "extent or amount of loss"); *Prien Props.,* 2008 WL 1733591 at *2 (appraisal does not address disputes regarding coverage issues).

**3. Conclusion**

Based on the foregoing, because there is no agreement to arbitrate coverage disputes, Plaintiffs have failed to state a claim upon which relief can be granted and there is no federal question jurisdiction. As a result, this Court should dismiss Plaintiffs' claim to compel arbitration.

**C. This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Complaint For Declaratory Judgment Because There is No Diversity.**

The only basis alleged by Plaintiffs for this Court's jurisdiction over the DJ Action is diversity. *See* Texas Complaint at ¶¶ 10, 11. As a result, the citizenship of each Plaintiff must be diverse from the citizenship of AK/IHI. *See* 28 U.S.C. § 1332.

AK/IHI is a general partnership with Aker Solutions US Inc. ("Aker") and IHI, Inc. ("IHI") as its partners. *See* Ex. A, Louisiana Complaint at ¶ 5; Texas Complaint at ¶ 9. As a partnership, it is well-settled that AK/IHI is a citizen of each state where its partners, Aker and IHI, are incorporated and have their principal places of business. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) (citizenship of partnership is determined by the citizenship of each of its partners); *International Paper Co. v. Denkman Assocs.*, 116 F.3d 134, 137 (5th Cir. 1997) (same); 28 U.S.C. § 1332(c)(1) (corporation is citizen of both the state where it was incorporated and the state where it has its principal place of business).

It is undisputed that Aker and IHI are Delaware corporations and that Aker has its principal place of business in Texas. *See* Ex. A, Louisiana Complaint at ¶¶ 6, 7; Texas Complaint at ¶ 9. However, Plaintiffs improperly allege that IHI has its principal place of business in Houston, Texas. *See* Texas Complaint at ¶ 9. In fact, IHI's principal place of business is New York, New York. *Compare* first-filed Louisiana Coverage Complaint at ¶ 7 *with* Texas Complaint at ¶ 9.

Every corporation "has one and only one principal place of business." *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 406 (5th Cir. 1987). The U.S. Supreme Court recently held in *Hertz Corporation v. Friend* that a corporation's principal place of business will be the corporation's "nerve center" and, in practice, the corporation's headquarters:

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center"...

No. 08-1107, 559 U.S. ___, slip. op. at 1, 14 (Feb. 23, 2010).

The United States Supreme Court's recent decision in *Olson* is also consistent with the Fifth Circuit's "total activity" approach to determining a corporation's principal place of business which considers the corporation's "nerve center" and its "place of activities." *J.A. Olson Co.*, 818 F.2d at 411-12. There are three general principals under the "total activity" test:

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant; but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's brain is given greater significance.

*Id.* at 411. As the attached Declaration of Keiichi Ishikane, Senior Vice-President – Sales of IHI, makes clear, the "brain," "nerve center" and headquarters of IHI are all in IHI's New York office, and thus, IHI's principal place of business is in New York, New York. *See* Ex. I, Declaration of Keiichi Ishikane ("Ishikane Decl.").

In particular, IHI has maintained its headquarters in New York, New York since around 1977. *See* Ex. I, Ishikane Decl. at ¶ 6. The Chief Executive Officer, Chief Operating Officer, Chief Financial Officer and President of IHI all work at IHI's New York office. *Id.* at ¶ 7. Most of IHI's Senior Vice Presidents work at IHI's New York office. *Id.* at ¶ 8. The corporate minute books for IHI are kept in IHI's New York office. *Id.* at ¶ 9. All major management, investment, and financial decisions for IHI are made at the New York office. *Id.* at ¶ 10. The corporate operating plan and budget of IHI are established in IHI's New York office. *Id.* at ¶ 11. The corporate books and records of IHI are kept in IHI's New York office. *Id.* at ¶ 12. The corporate checks of IHI are issued from IHI's New York office. *Id.* at ¶ 13. Corporate insurance policies for IHI are procured in the New York office and premiums for those policies are paid from the New York office. *Id.* at ¶ 14. Employee benefit plans such as health insurance, disability insurance, and pension/retirement programs for IHI are established and maintained in New York office. *Id.* at ¶ 15. Corporate income tax returns for IHI are prepared in IHI's New York office. *Id.* at ¶ 16. Simply put, IHI's New York office is IHI's nerve center and its principal place of business.

In fact, IHI did not have any office in Houston during any time relevant to the coverage disputes that are the subject of the DJ Action (i.e. the period from September 2008 to December 2009). Indeed, IHI did not open a Houston office until January 1, 2010, when IHI opened a small sales office. *Id.* at ¶ 17. *See also* Ex. J, Press Release. IHI's Houston sales office has one employee. *See* Ex. I, Ishikane Decl. at ¶ 17. The limited activities IHI conducts at its Houston, Texas office are supervised and controlled by management personnel in IHI's New York office. *Id.* at ¶ 18. In fact, the press release announcing the opening of IHI's Houston office makes it clear that the "Head Office" of IHI is in New York. *See* Ex. J, Press Release. *See also* Ex. I,

Ishikane Decl. at ¶ 5.

It is well established that *"[t]he mere fact that a corporation operates a branch or satellite facility in a particular state does not mean the corporation has a principal place of business in that state."* *Carr v. Transam Trucking, Inc.*, No. 3-07-CV-1944-BD, 2008 WL 866195, at *2 (N.D. Tex. Mar. 17, 2008) (emphasis added). *See also Karage v. First Advantage Corp.*, No. 3:09-CV-0604-M, 2009 WL 2568261, at *3 (N.D. Tex. Aug. 19, 2009) ("[M]ere fact that a corporation has operations in a particular state does not mean that that corporation has its principal place of business in that state."); *Sterling v. Zurich Am. Ins. Co.*, No. 4:09-CV-510-A, 2009 WL 3415789, at *4 (N.D. Tex. Oct. 22, 2009) (same); *Falgout v. Mid State Land & Timber Co.*, No. 08-5088, 2009 WL 2163162, at *3 (E.D. La. July 16, 2009) ("While [defendant] has an office in Houma, Louisiana and owns land in Louisiana, this alone does not indicate that the principal place of business is located there.").' *See also Petty v. Venable, Baetjer, Howard & Civiletti*, No. Civ.1.3:02-CV-1449-D, 2002 WL 31875567, at *3 (N.D. Tex. Dec. 18, 2002) (where corporation's headquarters was moved outside of Texas, its principal place of business was outside of Texas even though it owned property in Texas which it leased to others).

All of IHI's substantive and managerial-level decisions are made at its New York office, and, thus, IHI's principal place of business is in New York. *See, e.g., Hertz Corp.*, No. 08-1107, 559 U.S. ___, slip. op. at 1, 14; *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir. 1998) (where corporation's substantive and managerial-level decisions were made by its board of directors and officers, who all resided outside of Texas, corporation's principal place of business was not Texas); *Village Fair Shopping Ctr.*, 588 F.2d at 433 (corporation's principal place of business was its nerve center even though its significant "passive" investments in other states).

Based on the foregoing, AK/IHI is a citizen of Delaware, Texas and New York for diversity purposes. Insurers have admitted that Navigators and Arch are citizens of New York.[4] *See* Texas Complaint at ¶¶ 3, 7-8. As such, there is no diversity jurisdiction for the DJ Action. *See TY Equity Group v. Lee*, No. Civ.A.3:01-CV-0879-G, 2001 WL 1401392, at *3 (N.D. Tex. Nov. 7, 2001) (remanding case to state court because no complete diversity between plaintiff and partnership defendant); *Wachovia Bank N.A., v. Colson*, No. 1:09-CV222-HSO-JMR, 2009 WL 1620464, at *2 (S.D. Miss. June 9, 2009) (same).

For this reason, there is no diversity jurisdiction and this Court should dismiss the DJ Action.

**D.    Case Law Interpreting the Declaratory Judgment and Anti-Injunction Acts Bars the DJ Action**

Well-settled case law interpreting the Declaratory Judgment and Anti-Injunction Acts bars the DJ Action because of the prior pending Louisiana Coverage Lawsuit. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). While the Anti-Injunction Act generally bars a federal court from enjoining a state court proceeding, "[a] federal declaratory judgment will, of course, be *res judicata* of the state suit, thus resolving it as surely as an injunction..." *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505, 506 (5th Cir. 1988) (Fifth Circuit and majority of other circuits bar the issuance of a declaratory judgment that would have the same effect as an injunction).

---

[4]    Insurers have also admitted that National Union of Pittsburgh is a citizen of New York. *See* Texas Complaint at ¶ 3. However, the actual insurer for the CAR Policy is National Union of Louisiana, ***not*** National Union of Pittsburgh. *See* Louisiana Complaint at ¶¶ 8, 16. In fact, National Union of Louisiana signed endorsements to the CAR Policy and Insurers designated loss adjustor, McLarens, prepared proofs of loss for certain unallocated advance payments naming National Union of Louisiana as the Insurer for the CAR Policy. *See* Exs. K and L.

The United States Supreme Court has recognized this principle finding that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 91 (1971). Consequently, "when a state lawsuit is pending, *more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction-providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act.*" *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774, 776, 777 n.7 (5th Cir. 1993) (emphasis added) ("Using a declaratory judgment action to race to *res judicata* or to change forums is thoroughly inconsistent with the purposes of the Declaratory Judgment Act and should not be countenanced."). Because issuing "a declaratory judgment in such situations would be antithetical to the noble principles of federalism and comity," a district court *"may not consider the merits of the declaratory judgment action"* when the following three elements are present: (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, (2) the state case involves the same issues as those involved in the federal case, and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act. *Id.* at 776-77 (emphasis added). Each of these three elements is present here and Plaintiffs' Complaint is nothing more than a transparent attempt to end-run the Louisiana Coverage Lawsuit.

The Louisiana Coverage Lawsuit involves the identical coverage issues and all the Insurers for the CAR Policy and was filed almost two weeks *before* the DJ Action.[5] In particular, on January 22, 2010, AK/IHI filed the Louisiana Coverage Lawsuit against the

---

[5]     Although Plaintiffs claim that National Union of Pittsburgh is one of the insurers of the CAR Policy, the actual insurer is National Union of Louisiana. *See* Louisiana Complaint at ¶¶ 8, 16. *See also* Exs. K and L.

Insurers in the 38th Judicial District Court for the Parish of Cameron, State of Louisiana. *See* Ex. A, Louisiana Complaint at ¶¶ 8-16, 79-81. The Louisiana Coverage Lawsuit included a request for declaratory relief for the same coverage issues alleged in the DJ Action. Despite that, on February 4, 2010, Plaintiffs filed the DJ Action against AK/IHI (two days after AK/IHI notified McLarens of the Louisiana Coverage Lawsuit). *See* Texas Complaint at ¶¶ 2, 44-51. Among other things, the Louisiana Coverage Lawsuit requests that the court "determine the rights of AK/IHI and the duties and obligations of [the Insurers] under the CAR Policy" and seeks a declaration "finding that the losses, damages and expenses AK/IHI sustained from Hurricane Ike are covered under the CAR Policy." *See* Ex. A, Louisiana Complaint at ¶¶ 80-81. Similarly, Plaintiffs in the DJ Action seek a declaration regarding coverage under the CAR Policy for damages caused by Hurricane Ike, and specifically request a declaration that the CAR Policy "does not provide coverage for … a substantial portion of the amount claimed by AK/IHI." *See* Texas Complaint at ¶ 45.

Plaintiffs' DJ Action involves the same issues and was filed after AK/IHI filed its action, and thus "appears to have as its sole purpose the winning of a race to res judicata on the coverage issue pending in state court." *Scottsdale Ins. Co. v. Bayou Land & Marine*, No. Civ.A. 98-3668, 1999 WL 777714, at *5 (E.D. La. Sept. 30, 1999). For this reason, this Court should dismiss the DJ Action. *See, e.g., Great Lakes Dredge & Dock Co., LLC v. Larrisquitu*, 2007 WL 2330187, at *6-7 (S.D. Tex. Aug. 15, 2007) (granting motion to dismiss federal declaratory judgment that would essentially enjoin state-court proceedings); *Fort Worth & W. Ry. Co. v. The City of Fort Worth, Tex.*, No. 4:03-CV-319-Y, 2004 WL 743901, at *3 (N.D. Tex. Mar. 8, 2004) (same).

**E.** **Alternatively, this Court Should Exercise its Broad Discretion and Decline to Hear the DJ Action**

In the alternative, this Court should still exercise its broad discretion to refuse to hear the DJ action. *See Orix Credit Alliance*, 212 F.3d at 895; *Travelers Ins. Co.*, 996 F.2d at 776. It is well-settled in the Fifth Circuit that a district court is not required to decide a declaratory judgment action and instead has the broad discretion to dismiss that action. *See, e.g., Torch, Inc. v. LeBlanc*, 947 F.2d 193, 196 (5th Cir. 1991) (district court did not abuse its discretion in dismissing declaratory judgment action); *Missouri Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983) ("district court is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action."). As the Supreme Court explained in *Brillhart v. Excess Ins. Co. of America*, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court, presenting the same issues, not governed by federal law, between the same parties." 316 U.S. 491, 495 (1942). *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

In deciding whether to dismiss a declaratory action, a district court must consider the following factors set forth by the Fifth Circuit in *St. Paul Insurance Company v. Trejo*: (1) whether there is a pending state action in which all the matters in controversy may be fully litigated, (2) whether the plaintiff filed suit in anticipation of the lawsuit filed by the defendant, (3) whether the plaintiff engaged in forum shopping in bringing the suit, (4) whether possible inequities exist in allowing the declaratory plaintiff to gain precedence in time or to change forums, (5) whether federal court is a convenient forum for the parties and witnesses, (6) whether retaining the lawsuit in federal court would serve purposes of judicial economy, and (7) whether

the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *See St. Paul Ins. Co. v. Trejo*, 39 F.3d. 585, 590-91 (5th Cir. 1994).  While the seventh *Trejo* factor is inapplicable here, the other six *Trejo* factors clearly weigh in favor of this Court refusing to exercise its discretion over this case.

The first *Trejo* factor clearly weighs in favor of the Court declining to hear the DJ Action. Indeed, AK/IHI and the Insurers for the CAR Policy are already parties to a pending state court proceeding in which the coverage issues have been raised and may be resolved.  Further, state insurance law governs all insurance coverage issues involved in the DJ Action.

The second, third, and fourth *Trejo* factors also weigh in favor of the Court declining to hear the DJ Action because this action was filed for an improper or abusive purpose.  There is no diversity between AK/IHI and Plaintiffs because AK/IHI and certain Insurers are both citizens of New York.  Accordingly, Insurers can not properly remove the Louisiana Coverage Lawsuit to federal court.  *See* 28 U.S.C. § 1441(a).  Undeterred, Plaintiffs filed this action approximately two weeks after AK/IHI commenced the Louisiana Coverage Lawsuit obviously with no other purpose than to circumvent the pending Louisiana Coverage Lawsuit.

Additionally, the fifth and sixth *Trejo* factors, which focus on efficiency concerns, clearly weigh against this Court hearing this action.  Indeed, the Louisiana Coverage Lawsuit is pending in state court at the same location as the Project.  The key witnesses that would testify to the damage to the Project caused by Hurricane Ike as well as relevant documents will be located in Louisiana, not Texas.  Moreover, the Louisiana Coverage Lawsuit is more comprehensive than this action because it names as parties *all* the Insurers for the CAR Policy (including Lloyds and its managing agent, Navigators) as well as the Insurers' nominated loss adjuster under the CAR

Policy. The Louisiana Coverage Lawsuit not only seeks declaratory relief but also includes claims for breach of contract, bad faith and breach of duty that would encompass the same evidence and discovery as required for this action. Not only would it be burdensome for the parties to conduct parallel proceedings, but allowing this less comprehensive action to proceed would result in the potential for inconsistent state and federal court judgments involving identical state law issues.

Because the *Trejo* factors clearly weigh in favor of the Court declining to hear this action, this Court should avoid piecemeal and duplicative litigation by dismissing the DJ Action. *See Employers Ins. Of Wausau v. Gulf Island Marine, Inc.*, 718 F. Supp. 17, 18 (E.D. La. 1989) (granting motion to dismiss declaratory action because pending state suit would "resolve some if not all of the issues involved in this declaratory action").

## CONCLUSION

For the foregoing reasons, AK/IHI respectfully requests that this Court dismiss Plaintiffs' Complaint because it fails to state a claim upon which relief can be granted and because there is no federal question or diversity jurisdiction.

Date: February 25, 2010

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

By _____
      RICHARD W. AVERY
      State Bar 01454800, Federal ID 6615
      ERNEST G. FIELDER
      State Bar 00787464, Federal ID
      815 Walker, Suite 1001
      Houston, Texas 77002
      Telephone: (713) 237-3111
      Facsimile:  (713) 237-3202
      ATTORNEYS FOR AKER KVAERNER|IHI, a General
      Partnership

**OF COUNSEL:**

JOSEPH L. LUCIANA, III
JOHN R. DINGESS
BRIAN R. DAVIDSON
**K& L Gates, LLP**
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Telephone:   (412) 355-6500

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

        Myles A. Parker, Esq.
        Carroll Warren & Parker, PLLC
        P.O. Box 1005
        Jackson, MS  39215-1005

        Richard W. Avery