# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

NATIONAL UNION FIRE INSURANCE COMPANY     CASE NO. H-10-0342
OF PITTSBURGH, PENNSYLVANIA; ASSOCIATED
ELECTRIC & GAS INSURANCE SERVICES LTD.;
ALLIANZ GLOBAL RISKS US INSURANCE CO.;
COMMONWEALTH INSURANCE CO.;
NAVIGATORS MANAGEMENT COMPANY, INC.;
and ARCH SPECIALTY INSURANCE CO.

V.

AKER KVAERNER/IHI, a General Partnership

## <u>REPLY BRIEF OF AK/IHI IN FURTHER SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.     Short Statement of the Nature and Stage of the Proceeding ...................................................1

II.    Issue to be Ruled Upon and Standard of Review ................................................................1

III.   Summary of Argument ....................................................................................................1

IV.    Clauses Like General Condition 3, Providing for Appraisal of the Amount of Loss, are Separate and Distinct From Arbitration ..............................................................2

V.     Even Assuming Arguendo that General Condition 3 is an Arbitration Clause, Insurers Have Failed to Identify Any Agreement to Arbitrate Coverage Disputes.............5

VI.    The Parol Evidence Rule Bars Insurers' Attempt to Contradict the Terms of the CAR Policy and Insert Into the Policy a Broad "Arbitration" Provision ..........................10

VII.   Insurers Have Failed to Demonstrate Diversity Jurisdiction ...........................................11

VIII.  AK/IHI's Louisiana Coverage Lawsuit Bars This DJ Action from Proceeding................12

IX.    Conclusion ...................................................................................................................14

# TABLE OF AUTHORITIES

*Abshire v. Vermilion Parish Sch. Bd.*, 848 So.2d 552 (La. 2003) .................................................10

*Am. Elec. Power Co., Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282 (5th Cir. 2009).......................10

*AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) ........................5

*Bowmer v. Bowmer*, 50 N.Y.2d 288, 293-4 (N.Y. 1980).............................................................5, 6

*Chevron Phillips Chen. Co., LP. v. Sulzer Chemtech USA, Inc.*, 831 So.2d 474
    (La. Ct. App. 2002) .........................................................................................................6

*Crochet Equip. Co., Inc. v. The Bd. of County Comm'rs*, 20 F.Supp.2d 987 (M.D. La. 1998)...6, 7

*Davis v. Davis, 175 S.W.2d 276 (Tex. 1943)* .............................................................................10

*Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 286 (5th Cir. 2009) ........................3

*Eastern Minerals, Int'l, Inc. v. Cane Tennessee*, 713 N.Y.S.2d 29 (N.Y. App. Div. 2000)........5, 9

*Gangel v. DeGroot*, 41 N.Y.2d 840, 841 (N.Y. 1977).....................................................................5

*Girard v. Atlantic Mut. Ins. Co.*, 198 So.2d 444, 445 (La. Ct. App. 1967) .....................................3

*Hertz Corp. v. Friend*, 130 S.Ct. 1181 (U.S. Feb. 23, 2010) ....................................................1, 11

*Holt v. State Farm Lloyds*, No. CA3:98-CV-1076-R, 1999 WL 261923,
    (N.D. Tex. Apr. 21, 1999) ...............................................................................................3

*In re Delmar Box Co.*, 127 N.E.2d 808, 811 (N.Y. 1955) ...............................................................2

*Johnson's Inc. v. GERS, Inc.*, 778 So.2d 740 (La. Ct. App. 2001).................................................6

*Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009) .............................................................1, 6

*Mangin v. Murphy Oil USA, Inc., No. CIV.A.04-2172*, 2005 WL 1074987 at*1
    (E.D. La. 2005) ................................................................................................................9

*Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir.1971)..............................................12

*Mercury Bay Boating Club v. San Diego Yacht Club*, 557 N.E.2d 87 (N.Y. 1990) ....................10

*NL Indus., Inc. v. Onebeacon Am. Ins. Co.*, 435 F.Supp.2d 558, 566 (N.D. Tex. 2006).........11, 12

*Peerless Imps., Inc. v. Wine, Liquor, & Distillery Workers, Local One*, 903 F.2d 924 (2nd Cir. 1990)......................................................................6, 7

*Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998)..............................................................................6

*Prien Props., L.L.C. v. Allstate Ins. Co.*, No. 07CV 845, 2008 WL 1733591 at *2 (W.D. La. Apr. 14, 2008)..........................................................5

*Sabre Inc. v. Northwest Airlines*, 2004 WL 2533867 at *2, No. Civ.A. 4:04-CV-612-Y (N.D. Tex. Nov. 8, 2004)....................................................12

*Samuels v. State Farm Mut Auto Ins. Co.*, 939 So.2d 1235 (La. 2006).........................10

*Scottish Union & Nat'l Ins. Co. v. Clancy,* 8 S.W. 630, 631 (Tex. 1888).......................3

*St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, No. 07-5924, 2010 WL 148851, at *1 (E.D. La. Jan. 13, 2010) ................................3

*State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 887-88 (Tex. 2009)..............................2

*The Rice Co. (Suisse) v. Precious Flowers Ltd.*, 523 F.3d 528, 537 (5th Cir. 2008).......7

*Tolar v. Tolar,* 639 So.2d 399 (La. Ct. App. 1994) ......................................................10

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ...........5

*Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 681 (Tex. App. 1996) .................3

*Will of Ault,* 615 N.Y.S.2d 681, 684 (N.Y. App. Div. 1984).........................................10

*W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639 (N.Y. 1990).....................................10


LA. REV. STAT. ANN. § 22:1311 (West 2010).............................................................4

9 U.S.C. § 205.................................................................................................................9

AK/IHI provides the following reply to the Response in Opposition to Motion to Dismiss ("Response") filed by certain of the Insurers ("Insurers").[1]

## I.     Short Statement of the Nature and Stage of the Proceeding

Insurers filed a complaint seeking to compel arbitration and, in the alternative, for a declaratory judgment.   AK/IHI filed a motion to dismiss and Memorandum of Law in support therefore.   Insurers filed the Response.   AK/IHI now files this reply.

## II.     Issue to be Ruled Upon and Standard of Review

The issue to be ruled upon is whether AK/IHI's Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) should be granted on the grounds that (i) there is no agreement to arbitrate coverage disputes and, therefore, the Federal Arbitration Act does not apply, (ii) there is no diversity of citizenship between the parties, and (iii) there is a first-filed pending action in Louisiana involving issues identical to those raised in Insurers' complaint that bars this action.   As the party seeking to compel arbitration and seeking to establish diversity jurisdiction, Insurers' bear the burden of proof. *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009); *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (U.S. Feb. 23, 2010).

## III.     Summary of Argument

The CAR Policy at issue does not contain any agreement to arbitrate coverage disputes and Insurers have failed to identify any such agreement.   Accordingly, Insurers' complaint to compel arbitration of coverage disputes must be denied.

In the alternative, Insurers seek a declaratory judgment regarding certain coverage disputes under the CAR Policy.   However, because there is no diversity between the parties,

---

[1]     AK/IHI incorporates herein all terms defined in its Memorandum of Law in Support of Motion to Dismiss Complaint.

Insurers' complaint must be dismissed. Moreover, because AK/IHI, prior to Insurers filing this action, filed a bad faith, breach of duty and declaratory judgment lawsuit in Louisiana involving similar issues, this action must be dismissed.

## IV.  Clauses Like General Condition 3, Providing for Appraisal of the Amount of Loss, are Separate and Distinct From Arbitration.

Insurers argue that General Condition 3 is not an appraisal clause. Response at 4-5, 15-19. Insurers assertion is wrong.

Other than using the word "appraisal" rather than the word "arbitration," the provision at issue in the case of *In re Delmar Box Co.*, 127 N.E.2d 808, 811 (N.Y. 1955), uses language that is almost identical to General Condition 3 of the CAR Policy, describing the procedure that is to be followed when there is a dispute between the parties over "amount of loss," stating:

> In case the insured and this Company shall fail to agree as to the . . . amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

*Id.* at 810.

Other cases cited by AK/IHI contain similar provisions with language that is almost identical to General Condition 3 in describing the procedure to follow when there is a dispute

2

over amount of loss. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 887-888 (Tex. 2009) (Provision providing for appraisal procedure virtually identical to General Condition 3 of the CAR Policy); *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 681 (Tex. App. 1996) (same); *Holt v. State Farm Lloyds*, No. CA3:98-CV-1076-R, 1999 WL 261923, at *1 (N.D. Tex. Apr. 21, 1999) (same); *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, No. 07-5924, 2010 WL 148851, at *1 (E.D. La. Jan. 13, 2010) (same); *Girard v. Atlantic Mut. Ins. Co.*, 198 So.2d 444, 445 (La. Ct. App. 1967) (same). *See also Scottish Union & Nat'l Ins. Co. v. Clancy,* 8 S.W. 630, 631 (Tex. 1888) (Clause in question provides for selection of appraisers and umpire to determine amount of loss and submission to an umpire in the event appraisers disagree); *Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 286 (5th Cir. 2009) (clause in question provides for appraisal if the parties cannot agree on the amount of loss).

More importantly, under Louisiana law, an insurance policy providing fire insurance coverage for property located in Louisiana (like the CAR Policy) must contain a provision providing for an appraisal procedure when the insured and insurance company cannot agree on the amount of the loss (the "Louisiana Appraisal Provision"), as follow:

> Appraisal – In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then on the request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual

3

> cash value and loss. Each appraiser shall be paid by the party
> selecting him and the expenses of appraisal and umpire shall be
> paid by the parties equally.

*See* LA. REV. STAT. ANN. § 22:1311 (West 2010).

General Condition 3 contains language almost identical to the Louisiana Appraisal Provision except that the title of General Condition 3 was changed from "Appraisal" to "Arbitration" and the language of General Condition 3 uses the word "arbitration" when referring to the appraisal procedure. In particular, the Louisiana Appraisal Provision contains the following sentence: "Each appraiser shall be paid by the party selecting him and the expenses of *appraisal* and umpire shall be paid by the parties equally." (Emphasis added). General Condition 3 contains an almost identical sentence but uses "arbitration" instead of "appraisal," as follows: "The Insured and the Underwriters will each . . . [p]ay its chosen appraiser . . . and . . . [b]ear equally the other expenses of the *arbitration* and umpire." *See* Exhibit A, CAR Policy (emphasis added). Similarly, General Condition 3 states that, "if the *appraisers* fail to agree upon an *umpire*" then a judge of a court of record in the jurisdiction in which the "*arbitration*" is pending" will select the umpire. *Id.* (emphasis added). Again, by referring to "arbitration" in the context of disagreement of appraisers over appointment of an umpire, the provision equates the appraisal procedure to "arbitration" and demonstrates that the referenced "arbitration" and the appraisal procedure are one and the same.

Based on the foregoing, General Condition 3 is a modified version of the Louisiana Appraisal Clause. And, the United States District Court for the Western District of Louisiana has expressly held that an appraisal clause is separate and distinct from arbitration and not subject to the Federal Arbitration Act. In particular, in reviewing an insurance policy provision similar to General Condition 3 of the CAR Policy requiring an appraisal procedure

where the insured and the insurer could not agree on the "amount of loss," the Louisiana Federal Court stated: "At the outset, this Court agrees with Allstate that the appraisal process does not fall under the requirements of either the [Federal Arbitration Act] or the [Louisiana Arbitration Law] because appraisal is separate and distinct from arbitration." *Prien Props., LLC v. Allstate Ins. Co.*, No. 07CV 845, 2008 WL 1733591 at *2 (W.D. La. Apr. 14, 2008).

Based on the foregoing, General Condition 3 of the CAR Policy is an appraisal provision, not an arbitration clause. As such, this Court should dismiss Insurers' complaint seeking to compel arbitration.

**V.  Even Assuming *Arguendo* that General Condition 3 is an Arbitration Clause, Insurers Have Failed to Identify Any Agreement to Arbitrate Coverage Disputes.**

Even assuming *arguendo* that General Condition 3 is an arbitration provision (which it is not), Insurers have failed to identify any language in General Condition 3 constituting an agreement to arbitrate coverage disputes.

The United States Supreme Court has held that arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Consistent with that precedent, "the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration." *Eastern Minerals, Int'l, Inc. v. Cane Tennessee*, 713 N.Y.S.2d 29 (N.Y. App. Div. 2000) (citing *Bowmer v. Bowmer*, 50 N.Y.2d 288, 293-4 (N.Y. 1980); *Gangel v. DeGroot*, 41 N.Y.2d 840, 841 (N.Y. 1977)). To determine whether a dispute is arbitrable, the court must determine "(1) is there a valid agreement to arbitrate the claims and

(2) does the dispute in question fall within the scope of that arbitration agreement." *Jones v. Halliburton Co.,* 583 F.3d 228, 234 (5th Cir. 2009).

Courts in New York, Louisiana and Texas have denied arbitration where the dispute in question does not fall within the scope of the agreement to arbitrate. *See Bowmer*, 50 N.Y.2d 288 (Denying arbitration of claims not specifically made subject to arbitration by a separation agreement); *Johnson's Inc. v. GERS, Inc.*, 778 So.2d 740 (La. Ct. App. 2001) (Refusing to extend an arbitration provision to the subsequent sale of a computer system not covered by the original agreement); *Chevron Phillips Chem. Co., LP. v. Sulzer Chemtech USA, Inc.*, 831 So.2d 474 (La. Ct. App. 2002) (Finding an arbitration clause covering "the scope and interpretation" of a contract agreement does not cover alleged negligence); *Jones,* 583 F.3d 228 (Holding that an employee's tort claims did not fall within an arbitration provision of employment agreement providing for arbitration of claims arising "in or about the workplace").

And, both the Second and Fifth Circuits distinguish between broad and narrow arbitration clauses. *See Crochet Equip. Co., Inc. v. The Bd. of County Comm's,* 20 F.Supp.2d 987 (M.D. La. 1998); *Peerless Imps., Inc. v. Wine, Liquor, & Distillery Workers, Local One*, 903 F.2d 924 (2nd Cir. 1990). A broad arbitration clause uses particular language that demonstrates the intent to encompass an expansive reach of disputes. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998) (defining as "broad" a clause requiring arbitration of "any dispute, controversy or claim arising out of or relating to this agreement."). In contrast, a narrow arbitration clause uses restrictive language or limits the arbitration to a particular type of dispute. *See e.g. Id.* at 1067 (courts distinguish narrow arbitration from broad arbitration clauses based on the language used). And, when a

6

purported arbitration clause is narrow, a court must first determine if the dispute at issue falls within the scope of that narrow arbitration clause. *Crochet Equip. Co., Inc*, 20 F.Supp.2d at 989; *Peerless Imps., Inc.*903 F.2d at 927-8. *See also The Rice Co. (Suisse) v. Precious Flowers Ltd.*, 523 F.3d 528, 537 (5th Cir. 2008) (The terms of the agreement control who is actually bound by an arbitration agreement). Applying these standards, Insurers have the burden to show that the coverage disputes at issue in this case fall within the scope of the purported "Arbitration" clause.

Insurers, in an attempt to create a broad arbitration clause that does not exist, assert that the CAR Policy requires "arbitration of all claims arising from rights and duties under the Policy." Response at 8. However, Insurers fail to identify any language that actually says that in General Condition 3 or otherwise in the CAR Policy. In fact, there is no such language in General Condition 3 or the CAR Policy. And, without such language, there is no agreement to arbitrate the coverage disputes at issue in this case.

Indeed, even assuming *arguendo* that General Condition 3, titled "Arbitration" is actually an arbitration clause rather than an appraisal clause, General Condition 3 describes the purported arbitration narrowly as a procedure limited to appraising the amount of loss, stating in pertinent part:

> If, the Insured and the Underwriters fail to agree on the ***amount of loss***, each will, on the written demand of either, select a competent and disinterested ***appraiser***
>
> \*\*\*
>
> Each will notify the other of the ***appraiser*** selected within 20 days of such demand.
>
> The ***appraisers*** will first select a competent and disinterested ***umpire.*** If the ***appraisers*** fail to agree upon an ***umpire*** within thirty (30) days then, on the request of the Insured or the

Underwriters, the ***umpire*** will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The ***appraisers*** will then ***appraise*** the ***amount of the loss***, stating separately the Actual Cash Value and replacement cost value as of the date of the loss and the ***amount of loss***, for each item of physical loss or damage coverage of this Policy.

If the ***appraisers*** fail to agree they will submit their differences to the ***umpire.*** An award agreed to in writing by any two (2) will determine the ***amount of loss***.

The Insured and the Underwriters will each:

a. Pay its chosen ***appraiser***; and
b. Bear equally the other expenses of the arbitration and ***umpire***.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own ***appraisers*** and shall bear equally the expense of the ***umpire***.[2]

*See* Response. (Emphasis added).

Nowhere in General Condition 3 is there language stating that the parties agree to arbitrate "all claims arising from rights and duties under the Policy" or even that the parties agree to arbitrate coverage disputes. Rather, the plain language of the provision establishes

---

[2]    All six of the Insurers issued a policy containing this exact language. *See* Exhibit A (cover pages and General Condition 3 of each of the six policies). In fact, two of the Insurers admit they agreed to this exact language in binders they signed ***before*** issuing their policies. *See e.g.* Response, Exhibits C and D. Moreover, the sentence "The seat of arbitration shall be the State of New York" was added to an otherwise identical provision describing the appraisal procedure in General Condition 3 of the policy wording in the Underwriting Submission without making any other changes to that provision, thereby demonstrating that "seat of arbitration" is intended to refer to the described appraisal procedure. *See* Response, Exhibit A.

that any "arbitration" referred to is a narrow procedure limited to appraising the "amount of loss." And, New York courts recognize that under a narrow arbitration clause only the specifically referenced dispute is subject to arbitration, while all other disputes remain subject to judicial resolution.

In *E. Minerals Int'l., Inc. v. Cane Tenn.*, 713 N.Y.S.2d 29 (N.Y. App. Div. 2000), a lease provided for termination upon a total "taking" and, in that event, established a procedure to determine apportionment of financial consequences between the parties. *Id.* at 31. The lease also provided for arbitration of any dispute over the apportionment. One of the parties claimed that disputes over both the taking and the apportionment were subject to arbitration. The court rejected that assertion holding that, under the "plain language" of the lease, only disputes over mathematical apportionment were intended to be arbitrated; the "preliminary question" of whether there was a "taking" under the lease would be left for judicial resolution. *Id.* at 32 ("Hence, the principle of scrupulous reading of arbitration clauses is well established, in furtherance of which we extend the waiver of judicial redress encompassed in an arbitration clause no further than is actually agreed upon.").

Like the arbitration provision in *E. Minerals Int'l.*, disputes regarding the "amount of the loss" are subject to the procedure established by General Condition 3. However, coverage disputes are left to judicial resolution. And, because there is no written agreement providing for arbitration of coverage disputes under the CAR Policy, this lawsuit over coverage disputes does not "relate to" an arbitration agreement. As a result, this Court does not have jurisdiction under 9 U.S.C. § 205. *See Mangin v. Murphy Oil USA, Inc., No. CIV.A.04-2172,* 2005 WL 1074987, *1 (E.D. La. 2005) (If there is no agreement to arbitrate

the particular dispute "subject matter jurisdiction does not exist and the case must be remanded to state court.").

## VI.    The Parol Evidence Rule Bars Insurers' Attempt to Contradict the Terms of the CAR Policy and Insert Into the Policy a Broad "Arbitration" Provision.

Insurers attempt to use parol evidence (affidavits of underwriters) to contradict the plain language of the CAR Policy and insert into the policy a broad "Arbitration" provision "requiring binding arbitration of all disputes." *See* Response at 6-8, Exhibits C and D. However, the law of Louisiana, New York and Texas is well-settled that a party may not use parol evidence to contradict the terms of a written agreement. *Will of Ault*, 615 N.Y.S.2d 681, 684 (N.Y. App. Div. 1984) (citing *W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639 (N.Y. 1990), *Mercury Bay Boating Club v. San Diego Yacht Club,* 557 N.E.2d 87 (N.Y. 1990) (evidence outside the four corners of the Agreement as to what a party claimed was really intended is inadmissible to vary the terms of that Agreement)); *Davis v. Davis,* 175 S.W.2d 276 (Tex. 1943) (admission of extrinsic evidence to vary or contradict the terms of a written instrument is prohibited); *Tolar v. Tolar,* 639 So.2d 399 (La. Ct. App. 1994). Moreover, this Court has also specifically held that a party may not use parol evidence to create ambiguity in the meaning of a term in the agreement. *Am. Elec. Power Co., Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282 (5th Cir. 2009) (comparing *Samuels v. State Farm Mut Auto Ins. Co.*, 939 So.2d 1235 (La. 2006), with *Abshire v. Vermilion Parish Sch. Bd.*, 848 So.2d 552 (La. 2003)).

For these reasons, this Court must reject Insurers' attempt to contradict the plain language of the CAR Policy.

**VII.   Insurers Have Failed to Demonstrate Diversity Jurisdiction.**

Insurers have failed to meet their burden of establishing that IHI's principal place of business is in Houston, Texas. Insurers, in an attempt to create diversity jurisdiction where none exists, contend that "*upon information and belief*, the principal place of business of IHI, Inc. is Houston, Texas." Response, p. 19 (emphasis added). Insurers acknowledge that they have presented no evidence whatsoever to support this contention. To the contrary, Insurers admit that the Declaration of Keiichi Ishikane, which sets forth in detail the facts that demonstrate that IHI's principal place of business is New York, New York, is "unchallenged." Response at 21.

Recognizing that IHI's principal place of business destroys diversity in this matter, and recognizing that they can only speculate that IHI's principal place of business is not in New York, Insurers ask this Court to allow them to go on an unwarranted "fishing expedition" through "jurisdiction-related discovery" concerning IHI's principal place of business. Response, p. 22. However, because Insurers have failed to assert any specific facts sufficient to cast any doubt on the Ishikane Declaration, or establish with any degree of certainty that IHI's principal place of business is in Houston, Texas, their request to conduct wasteful and burdensome jurisdictional discovery should be denied. *NL Indus., Inc. v. Onebeacon Am. Ins. Co.*, 435 F.Supp.2d 558, 566 (N.D. Tex. 2006) ("The court does not believe jurisdictional discovery should be undertaken when the party requesting such discovery can only suggest or speculate that the requested discovery will shed light on or resolve the issues pertaining to diversity of citizenship.").

In short, Insurers have failed to present any competent evidence to meet their burden of establishing diversity jurisdiction, or to warrant jurisdictional discovery. *Hertz Corp. v.*

*Friend*, 130 S.Ct. 1181 (U.S. Feb. 23, 2010); *NL Indus.*, 435 F.Supp.2d at 562 (". . . the one who seeks to invoke federal court jurisdiction bears the burden of establishing that such jurisdiction exists").

For these reasons, this lawsuit should be dismissed on the grounds of lack of diversity.

## VIII.   AK/IHI's Louisiana Coverage Lawsuit Bars This DJ Action from Proceeding

Insurers, apparently recognizing the impact that AK/IHI's first-filed state court Louisiana Coverage Lawsuit has on this court's ability to hear Insurers' second-filed DJ Action, contend that the Anti-Injunction Act and the Declaratory Judgment Act do not apply because "no parallel action is pending in state court **at this time**." Response at 23. (Emphasis added). As Insurers acknowledge, AK/IHI filed a Motion to Remand its first-filed Louisiana Coverage Lawsuit back to state court following Insurers' improper removal. For reasons similar to those set forth herein (*i.e.,* lack of arbitrability and lack of diversity), AK/IHI maintains that its Louisiana Coverage Lawsuit must be remanded to state court in Cameron Parish, Louisiana. As such, for all of the reasons set forth in Defendants' Memorandum of Law in Support of Motion to dismiss Complaint, the Anti-Injunction Act and the Declaratory Judgment Act bar this action.

Even if AK/IHI's first-filed Louisiana Coverage Lawsuit remains in federal district court in Louisiana (which AK/IHI's maintains it should not), because both actions address similar, if not identical, issues, and because the Louisiana Coverage Lawsuit is the first-filed action, the matter would proceed in federal district court in Louisiana. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir.1971); *Sabre Inc. v. Northwest Airlines*, 2004 WL 2533867 at *2, No. Civ.A. 4:04-CV-612-Y (N.D. Tex. Nov. 8, 2004) ("The Fifth Circuit

adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed").

Insurers also contend that the Anti-Injunction Act and the Declaratory Judgment Act do not apply because the "primary relief sought by Insurers in this action is an order compelling arbitration." Response at 23. As set forth above, Insurers' request for an order compelling arbitration must be denied. Accordingly, the only relief pending (subject to AK/IHI's motion to dismiss for lack of diversity), is Insurers' request for a declaratory judgment. The Anti-Injunction and Declaratory Judgment Acts, therefore, bars this DJ Action.

Finally, Insurers contend that even if the Louisiana Coverage Lawsuit were remanded to state court, as it should be, the Anti Injunction Act would not bar this Court from "ruling on the arbitration issue under the Convention and/or enjoining the state court action." Response at 25. Insurers' contention is illogical. If the Louisiana Coverage Lawsuit were remanded to state court, the federal district court in Louisiana would have necessarily concluded that the Federal Arbitration Act did not apply. As such, this Court would lack jurisdiction to compel arbitration. Any decision to the contrary would improperly result in inconsistent federal court decisions on the same subject matter.

In sum, Insurers' second-filed DJ Action cannot proceed.

IX. **Conclusion**

For the foregoing reasons, this Court should grant AK/IHI's Motion to Dismiss.

Respectfully submitted:

Date: March 29, 2010

**GLAST, PHILLIPS & MURRAY, P.C.**

By /s/ Richard W. Avery

RICHARD W. AVERY
State Bar 01454800, Federal ID 6615
ERNEST G. FIELDER
State Bar 00787464, Federal ID
815 Walker, Suite 1001
Houston, Texas 77002
Telephone: (713) 237-3111
Facsimile: (713) 237-3202
ATTORNEYS FOR AKER
KVAERNER/IHI, a General
Partnership

**OF COUNSEL:**

JOSEPH L. LUCIANA, III
JOHN R. DINGESS
BRIAN R. DAVIDSON
Dingess, Foster, Luciana,
   Davidson & Chleboski LLP
PNC Center, Third Floor
20 Stanwix Street
Pittsburgh, PA 15222
Telephone: (412)
Date: February 25, 2010

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

Myles A. Parker, Esq.
Carroll Warren & Parker, PLLC
P.O. Box 1005
Jackson, MS 39215-1005

/s/ Richard W. Avery
Richard W. Avery

# EXHIBIT A

# National Union of Louisiana Policy Cover Page and General Condition 3

PRODUCER'S COPY

| COMMISSION RATE(S) | | | | |
|---|---|---|---|---|
| S.P.U. | COMPANY BRANCH | PRODUCER | PRODUCER'S CITY | PRODUCER'S NUMBER |
| | TX | WILLIS RISK SOLUTIONS | HOUSTON | 16587 |

**No. ST 260 97 12**

**\*\*NEW\*\***
RENEWAL OF NUMBER

| 4 |
|---|

COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BY NUMBER

A STOCK INSURANCE COMPANY (HEREIN CALLED THE COMPANY)

Insured's Name and Mailing Address

SEMPRA ENERGY
2.25 NORTH OF HACKBERRY, LA
HACKBERRY, LOUISIANA 70645

POLICY PERIOD FROM **9/15/05** TO **12/16/06** 12:01 AM STANDARD TIME
AT PLACE OF ISSUANCE **Houston, TX** Years **Broken**

1. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
2. AMERICAN HOME ASSURANCE COMPANY
3. THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
4. BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA
5. AIU INSURANCE COMPANY


Member Companies of American International Group, Inc.

EXECUTIVE OFFICES
70 PINE STREET NEW YORK, N.Y. 10270

| TOTAL PREMIUM | | | | PREMIUM PAYABLE | | |
|---|---|---|---|---|---|---|
| LIMIT OF LIABILITY | RATE | PREMIUM (IF PAID IN FULL AT INCEPTION) | TOTAL PREMIUM IF PAID ANNUALLY | AT INCEPTION | AT FIRST ANNIVERSARY | AT SECOND ANNIVERSARY |
| $ * SEE BELOW | $ VARIOUS | $529,600 | $ | $ | $ | $ |

In consideration of the payment of the premium specified above, and in reliance upon the statements made to the Company by application forming a part hereof and its attachments incorporated herein, the Company does insure the Insured named above, hereinafter called the Insured, whose address is shown above, from the inception date shown above, at 12:01 A.M. (Standard Time), to the expiration date shown above, at 12:01 A.M. (Standard Time), at place of issuance to an amount not exceeding the Limit of Liability specified above, or as described in the forms and endorsements attached hereto.

**\*LIMIT OF LIABILITY:**

$120,000,000 p/o $400,000,000

**STARR TECH PARTICIPATION: 30%**

Reviewed By _Lesly_
DATE _9/26/06_

Countersigned by **Dean Stroud - President**
Authorized Representative

59533 (1 94)

PRODUCER'S COPY

f. At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy, and
b. The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a. Pay its chosen appraiser; and
b. Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.

## 5. Primary Insurance

Subject otherwise to Memoranda "4" of this Policy (50/50 clause), it is agreed that this Policy provides primary cover for the Insured and that in the event of Damage covered by this Policy which is also covered under any other policy of insurance taken out by the Insured the Insurers will indemnify the Insured as if such other policy of insurance did not exist and the Insurers waive rights of recovery, if any, against the Insurers of such other policy of insurance.

# Navigators Policy Cover Page and General Condition 3

# Revised

## Certificate of Insurance

### Issued by

### Navigators Special Risk, Inc ✓

### *( hereinafter called "Correspondent" )*

### Evidencing Placement of Insurance with certain

### UNDERWRITERS AT LLOYD'S, LONDON

Correspondent hereby certifies that insurance as described herein has been effected with certain Underwriters at Lloyd's, London.

**Amount $**   50,000,000 ✓     **Rate**   Per Declarations     **Premium**   $220,667.25 ✓

In Consideration of the Stipulations herein named

**Do Insure**     SEMPRA ENERGY – CAMERON LNG ✓

**Whose address is**     101 Ash Street, San Diego, CA 92101 ✓

**From**    September 15, 2005 ✓     **00:01 a.m. L.S.T.**
**To**      December 16,2008 ✓     **00:01 a.m. L.S.T.**

**Hereon:**   12.5% ✓              of the amount and premium stated herein.

Such insurance has been placed in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London, whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters" and in consideration of the premium specified herein, Underwriters have agreed to bind themselves severally and not jointly each for his own part and not one for another, their Executors and Administrators.

The Assured is requested to read this Certificate and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All enquires regarding this Certificate should be addressed to the following Correspondent:

"This insurance contract is with an insurer not licensed to transact insurance in this State and is issued and delivered as a surplus lines coverage, pursuant to the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and this insurer is not a member of the property and casualty insurance guaranty association created under the Insurance Code, Article 12.28-C. The Insurance Code, Article 1.14-2, requires payment of _____ tax on gross premium."

Navigators Special Risk, Inc.

By _(signature)_     2/7/2006

f. At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy, and
b. The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a. Pay its chosen appraiser; and
b. Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.

## 5. Primary Insurance

Subject otherwise to Memoranda "4" of this Policy (50/50 clause), it is agreed that this Policy provides primary cover for the Insured and that in the event of Damage covered by this Policy which is also covered under any other policy of insurance taken out by the Insured the Insurers will indemnify the Insured as if such other policy of insurance did not exist and the Insurers waive rights of recovery, if any, against the Insurers of such other policy of insurance.



# Commonwealth Policy Cover Page and General Condition 3



# Commonwealth Insurance Company

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR COVERAGE IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE OF PREMIUM THROUGH 12/31/05 FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

### SCHEDULE

Terrorism Premium (Certified Acts) through 12/31/05 $2,270.
for Commonwealth Insurance Company's 12.5% participation only.

Additional information, if any, concerning the terrorism premium:

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

"This insurance contract is with an insurer not licensed to transact insurance in this State and is issued and delivered as a surplus lines coverage, pursuant to the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and this insurer is not a member of the property and casualty insurance guaranty association created under the insurance Code, Article 12.26-C. The insurance Code, Article 1.14-2, requires payment of _____ tax on gross premium."

f.  At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a.  The Insured has fully complied with all provisions of this Policy, and
b.  The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a.  Pay its chosen appraiser; and
b.  Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.

## 5. Primary Insurance

Subject otherwise to Memoranda "4" of this Policy (50/50 clause), it is agreed that this Policy provides primary cover for the Insured and that in the event of Damage covered by this Policy which is also covered under any other policy of insurance taken out by the Insured the Insurers will indemnify the Insured as if such other policy of insurance did not exist and the Insurers waive rights of recovery, if any, against the Insurers of such other policy of insurance.

# Arch Policy Cover Page and General Condition

3



# ✳️Arch
## Insurance Group ✓

## ARCH SPECIALTY INSURANCE COMPANY

A Wisconsin Corporation

Home Office Address:
300 First Stamford Place, 5th Floor
Stamford, CT 06902

Administrative Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
Tel: (800)-817-3252

## FOLLOW FORM CONSTRUCTION ALL RISKS ✓

### DECLARATIONS

| | |
|---|---|
| **Policy Number:** | CAR0009987-00 ✓ |
| **Project Name:** | Cameron LNG Receiving Terminal Project ✓ |

**RECEIVED JUN 2 7 2006**

| | |
|---|---|
| **Named Insured:** | Sempra Energy ✓ |
| **Address:** | 101 Ash Street |
| **City/State/Zip:** | San Diego, CA 92101-3017 |
| **Broker:** | Willis of Texas, Inc. |
| **Address:** | One Riverway, Suite 2200 |
| **City/State/Zip:** | Houston, TX 77056 |

*Reviewed by M. Smith*
*DATE 6-28-06*

**Policy Period:**
From: September 15, 2005 ✓   To: December 16, 2008 ✓
at 12:01 A.M., Standard Time at your mailing address shown above.

*s/b*
*local —*
*Home Office in the wind prop*

**Limit/Participation:** $40,000,000 p/o 400,000,000 x/s Deductible

**Premium:** $176,534.00 ✓

**Deductibles and Sublimits:** As per attached policy

**Terms and Conditions:** As per attached policy

*Reviewed by RWJ*
*DATE 10/2/06*

---

Arch Specialty Insurance Company is licensed in the state of Wisconsin only.
Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

f. At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy, and
b. The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a. Pay its chosen appraiser; and
b. Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.

## 5. Primary Insurance

Subject otherwise to Memoranda "4" of this Policy (50/50 clause), it is agreed that this Policy provides primary cover for the Insured in the event of Damage covered by this Policy which is also covered under any other policy of insurance taken out by the Insured the Insurers will indemnify the Insured as if such other policy of insurance did not exist and the Insurers waive rights of recovery, if any, against the Insurers of such other policy of insurance.



# AEGIS Policy Cover Page and General Condition 3

# PROPERTY INSURANCE

**POLICY OF ALL RISK PROPERTY INSURANCE INCLUDING MACHINERY BREAKDOWN
EFFECTED WITH ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES LIMITED
HAMILTON, BERMUDA**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

*Words and phrases which appear in all capital letters have the special meanings set forth
in Section VIII. Definitions of the POLICY.*



AEGIS
Associated Electric
& Gas Insurance
Services Limited
Hamilton, Bermuda

RECEIVED NOV 1 2 2005

## Subscription Policy

Reviewed By *M. Smith*
DATE *11-12-05*
*B Lusby - 12/13/05*
*To insl 12/14/01*

**POLICY NUMBER:** L0022B1A05 ✓

**INSURED NAME:** Sempra Energy and its subsidiaries, Cameron LNG, including its
shareholders and subsidiaries, if any; ✓

**INSURED'S ADDRESS:** 101 Ash St. HQ05A ✓
San Diego, CA 92101-3017 ✓

**Item 2:** **POLICY PERIOD:** from the 15th day of September, 2005 until the 16th day
of December, 2008 both days at 12:01 A.M. Standard
Time at the Insured Address above.

**Item 3:** **Policy Premium:** $317,761 (18% AEGIS Participation) part of $1,765,338

**Item 4:** **POLICY TERRITORY:** This policy cover the within the fifty states
comprising the United States of America and the
District of Columbia.

**Item 5:** **INSURED LOCATION (S):**

Cameron Parish, Louisiana, 2.25 miles north of Hackberry, Louisiana, and
approximately 15 miles south of Lake Charles, Louisiana, near the coast of the Gulf
of Mexico, or elsewhere in the State of Louisiana in connection with the project but
specifically including the project laydown yard located approximately 1,000 feet
north of the Project site as well as temporary offsite warehouse storage within a 25
mile radius of the Project site.

e. When called upon to do so deliver to the Insurers or their representative a statement in writing of all particulars and details reasonably practicable of the Property affected and the value thereof and the Damage thereto and furnish all such vouchers, proofs, explanations and other evidence as may be reasonably required by the Insurers together with a statutory declaration if required in verification of the statement;

f. At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. ✓Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy, and
b. The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a. Pay its chosen appraiser; and
b. Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.

# Allianz Policy Cover Page and General Condition 3

# Allianz ⑪

## Global Risks

**Allianz Global Risks US Insurance Company**
2350 Empire Avenue, Burbank, CA 91504

## COMMERCIAL LINES POLICY

Smith – 11/8/05
Chd – Lusby – 12/13/05
To Insd 12/14/05

**THIS POLICY CONSISTS OF:**
- **DECLARATIONS**
- **ONE OR MORE COVERAGE PARTS.**

**A COVERAGE PART CONSISTS OF:**
- **ONE OR MORE COVERAGE FORMS**
- **APPLICABLE FORMS AND ENDORSEMENTS**


## GENERAL CONDITIONS (CONTINUED)

e. When called upon to do so deliver to the Insurers or their representative a statement in writing of all particulars and details reasonably practicable of the Property affected and the value thereof and the Damage thereto and furnish all such vouchers, proofs, explanations and other evidence as may be reasonably required by the Insurers together with a statutory declaration if required in verification of the statement;

f. At the expense of the Insurers do or permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights or remedies or obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon its paying for or making good any Damage under this Policy whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

## 3. Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy, and

b The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a. Pay its chosen appraiser; and

b. Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

The seat of arbitration shall be the State of New York.

## 4. Access

The Insurers' officials or representatives shall have the right at all reasonable times to visit the Project Site and to inspect and examine the Insured Property.